649 F.2d 670
 24 Fair Empl.Prac.Cas. 947,
27 Fair Empl.Prac.Cas. 1324,
24 Empl. Prac. Dec. P 31,425
Ute R. HARRISS and Margaret A. Feather, Plaintiffs-Appellants,
v.
PAN AMERICAN WORLD AIRWAYS, INC., Defendant-Appellee.
 C.A. No. 78-1214.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 16, 1980.
Decided Dec. 23, 1980.
As Corrected Dec. 30, 1980.
Rehearing Denied March 30, 1981.
Rehearing and Rehearing En Banc Denied June 22, 1981.
 
 Elizabeth R. Rindskopf, Washington, D. C., Cohen, Vitt & Annand, Alexandria, Va., argued, Cohen, Vitt & Annand, Alexandria, Va., Stephen L. Spitz, Lawyers Committee for Civ. Rights Under Law, Washington, D. C., Ronald Yank, Carroll, Burdick & McDonough, San Francisco, Cal., Robert B. Wallace, Surrey, Karasik & Morse, Washington, D. C., on brief, for plaintiffs-appellants.
 Robert S. Venning, Catherine P. Rosen, Heller, Ehrman, White & McAulieff, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before ANDERSON, SCHROEDER and FARRIS, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Appellants Ute Harriss and Margaret Feather brought this class action against Pan American World Airways charging it with violations of sections 703(a)(1), (2) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), (2). They sued on behalf of themselves and other Pan Am female flight attendants. They contend that Pam Am violated Title VII by: (1) requiring that female flight attendants take maternity leave immediately upon learning of their pregnancy; (2) requiring that they not return to work before sixty days after the birth of the child; (3) denying them accrual of seniority after the first ninety days of their leave; and (4) denying them the use of sick leave and other fringe benefits during their leave.
 
 
 2
 The United States District Court for the Northern District of California, after trial, held that Pan Am's policies requiring commencement of leave upon pregnancy (Stop Policy) and continuation of leave for sixty days after birth (Start Policy) constituted prima facie sex discrimination but that both policies were justified as business necessities and bona fide occupational qualifications. Harriss v. Pan American World Airways, Inc., 437 F.Supp. 413 (N.D.Cal.1977). The district court held that neither the seniority policy nor the sick leave policy constituted a prima facie violation. Id.[1] The class action plaintiffs have not challenged the sick leave holding but are appealing the violation of the Stop and Start Policies and the Seniority Policy.
 
 
 3
 We agree with the district court that the Stop Policy, although prima facie sex discrimination, was justified by safety considerations. The court did not make sufficient factual findings to allow us to determine the necessity of the Start Policy, and thus we remand that question for further proceedings as herein defined. Finally, we hold that the Seniority Policy constituted prima facie sex discrimination and remand for the district court to determine whether Pan Am established that its policy was justified as either a business necessity or a bona fide occupation qualification. We affirm in part and remand in part.
 
 FACTS
 
 4
 The challenged Pan Am maternity leave policy requires a flight attendant to notify her supervisor within twenty-four hours of becoming aware of her pregnancy and, upon giving such notice, to begin immediately an unpaid leave of absence which lasts no fewer than sixty and no more than ninety days after delivery. The policy's enforcement provision states: "A Cabin Attendant's failure to comply with any of the procedures set forth above will be considered a voluntary resignation."
 
 
 5
 During pregnancy leave, a flight attendant does not accrue seniority and loses certain other employment benefits such as sick pay and some medical insurance coverage. Pan Am classifies pregnancy leave, like medical and emergency leave, as a non-discretionary leave of absence. Discretionary leave is granted by Pan Am for personal reasons. Employees on discretionary leave accrue seniority for a maximum of ninety days while those on medical leave may accrue seniority for as long as three years. Feather and Harriss lost approximately 130 days of seniority as a result of their mandatory maternity leaves.
 
 DISCUSSION
 
 6
 The plaintiffs' Title VII challenge was tried and decided before the amended definition of sex discrimination became effective on October 31, 1978. Under that definition sex discrimination specifically includes discrimination based on pregnancy. Since appellants seek both injunctive relief and back pay, we must assess the legality of Pan Am's policies both before and after the 1978 amendment.
 
 
 7
 To establish a Title VII violation for sex discrimination, a plaintiff must carry the burden of proving either that the challenged employment practice intentionally discriminates on the basis of sex or that it has a sexually discriminatory effect. Dothard v. Rawlinson, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726-2727, 53 L.Ed.2d 786 (1977); deLaurier v. San Diego Unified School Dist., 588 F.2d 674, 676 (9th Cir. 1978). If a prima facie case is established, the burden shifts to the employer to justify the challenged practice. Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971); deLaurier v. San Diego Unified School Dist., supra. If the employer meets this burden, the plaintiff may show that the employer could use alternative practices which accomplish the same purpose without discriminatory effects. Albemarle Paper Co. v. Moody, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975); deLaurier v. San Diego Unified School Dist., supra.
 
 
 8
 I. The Pre-Amendment Legality of Pan Am's Stop Policy
 
 A. Prima Facie Sex Discrimination
 
 9
 The Supreme Court, in General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), held that an employer's disability insurance program which excluded coverage for pregnancy-caused disability did not, on its face, constitute sex discrimination under Title VII. In Nashville Gas Co. v. Satty, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977), however, the Court made clear that pregnancy classifications which had a discriminatory impact on women were prima facie Title VII violations under the reasoning of Griggs v. Duke Power Co., supra (holding that the use of educational prerequisites and intelligence tests was prima facie race discrimination because of the discriminatory effect it had on Blacks). The district court, here, applied Griggs and concluded that Pan Am's mandatory pregnancy leave policy had a discriminatory impact on women because it had "the effect of excluding a disproportionate number of women from employment." 437 F.Supp. at 431. We agree.
 
 
 10
 In deLaurier v. San Diego Unified School Dist., 588 F.2d 674 (9th Cir. 1978), we found that a mandatory pregnancy leave policy for San Diego school teachers had a discriminatory impact on women. We noted that "it is plain that mandatory maternity leave is not the withholding of a potential benefit (as in Gilbert, supra), but is a restriction on pregnant women's employment opportunities." Id. at 677. Adopting the logic of deLaurier, we agree with the district court's finding that Pan Am's Stop Policy had a discriminatory impact on women and was, therefore, a prima facie Title VII violation.
 
 B. The "Business Necessity" Defense
 
 11
 The district court held that Pan Am carried its burden of showing that its Stop Policy was a "Business Necessity" and a "Bona Fide Occupational Qualification" (BFOQ). 437 F.Supp. at 432-35. Plaintiffs challenge this holding on the ground that the district court applied a too lenient standard. Consequently, we must determine the correct standard for these two defenses which we have previously recognized as being closely related. deLaurier v. San Diego Unified School Dist., 588 F.2d at 678.
 
 
 12
 The district court treated the two defenses interchangeably. In our view, however, the defenses apply to different types of Title VII violations. The BFOQ defense is applicable to employment practices that purposefully discriminate on the basis of sex while the Business Necessity defense is appropriately raised where facially neutral employment practices run afoul of Title VII only because of their disparate impact.[2] See Burwell v. Eastern Air Lines, Inc., 24 Empl.Prac.Dec. (CCH) P 31,213, at 17,378-79, 633 F.2d 361 (4th Cir. 1980).
 
 
 13
 In assessing the legality of employment practices which preceded the 1978 expansion of the definition of sex discrimination, we are compelled by the Supreme Court's reasoning in Gilbert to treat the Stop Policy as gender-neutral on its face. The district court, therefore, should have considered only whether Pan Am carried its burden of showing Business Necessity.
 
 
 14
 The standard applied by the district court combined phraseology associated with both the BFOQ and the Business Necessity defenses.[3] Even if the district court applied an improper standard, however, we conclude that its findings of fact establish that Pan Am's Stop Policy was justified as a Business Necessity.
 
 
 15
 Our most thorough consideration of the Business Necessity defense arose in the context of a challenge to the hiring practices of the Los Angeles Police Department. Blake v. City of Los Angeles, 595 F.2d 1367 (9th Cir. 1979). We found those practices to have a discriminatory impact on women, thus constituting a prima facie Title VII violation. In assessing the City's assertion of the Business Necessity defense, we quoted the standard accepted by the Supreme Court in Dothard v. Rawlinson, 433 U.S. 321, 332 n.14, 97 S.Ct. 2720, 2728 n.14, 53 L.Ed.2d 786 (1977): "(A) discriminatory employment practice must be shown to be necessary to safe and efficient job performance." Blake, supra, at 1376. We stated further that, to meet the requirement,
 
 
 16
 "the business purpose must be sufficiently compelling to override any (discriminatory) impact; the challenged practice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser (discriminatory) impact."
 
 
 17
 Blake, supra, at 1376, quoting from Robinson v. Lorillard Corp., 444 F.2d 791, 798 (4th Cir. 1971).
 
 
 18
 The district court found that passenger safety was the primary justifying business purpose and that such safety was an essential aspect of Pan Am's business. Passenger safety is a "sufficiently compelling" purpose to satisfy the first part of the Robinson v. Lorillard test. The district court also found that Pan Am had shown that assessing the abilities of pregnant flight attendants on an individual basis was "highly impractical," 437 F.Supp. at 435, and that appellants had not established any "feasible alternate policy of lesser adverse impact." 437 F.Supp. at 434. These factual findings are not "clearly erroneous."
 
 
 19
 The district court did not, however, specifically determine the degree of the Stop Policy's effectiveness in furthering passenger safety. The court found that flight attendants play an important role in certain safety operations, particularly emergency evacuations. 437 F.Supp. at 420-22. The court found further that there was medical evidence to support the view that a pregnant flight attendant, during her first two trimesters, was more likely than a nonpregnant flight attendant to be incapacitated during an emergency evacuation. 437 F.Supp. at 423. The court concluded that, in light of this medical evidence, the Stop Policy was "reasonably calculated to further the safety objective." 437 F.Supp. at 434. Rather than requiring Pan Am to show that its policy was effective in furthering passenger safety, as required by the Lorillard standard, the district court's standard required only that the challenged practice be "reasonable" in light of the safety considerations.
 
 
 20
 The requirement that the challenged policy be "effective" in furthering the asserted business interest is not independent of the requirement that the interest be compelling. The degree of effectiveness required of the Stop Policy depends on the gravity of the safety hazard posed by a flight attendant who becomes incapacitated during an emergency.[4]
 
 
 21
 The district court found that 1) "(t)he ability of each flight attendant to perform at full capacity is vital to emergency management"; 2) a flight attendant's ability to perform her emergency functions might be impaired by fatigue, nausea and vomiting, or spontaneous abortion, all of which occur with some regularity during the first two trimesters of pregnancy; and 3) the gravity of the safety risk, measured by the likelihood of harm and the probable severity of harm, was great enough to warrant the imposition of a stringent personnel policy for flight attendants. None of these findings is clearly erroneous.
 
 
 22
 In light of these findings, we conclude that Pan Am has shown a sufficient correlation between its Stop Policy and passenger safety to satisfy an appropriately narrow standard for the Business Necessity defense.
 
 
 23
 II. The Post-Amendment Legality of Pan Am's Stop Policy
 
 A. Prima Facie Sex Discrimination
 
 24
 The Title VII definition of sex discrimination was amended in 1978 to read:
 
 
 25
 The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, as other persons not so affected but similar in their ability or inability to work.
 
 
 26
 42 U.S.C. § 2000e(k) (Supp. II 1978). The legislative history, as well as the statutory language itself, make clear that after October 31, 1978, "distinctions based on pregnancy are per se violations of Title VII." H.R. Rep. No. 948, 95th Cong., 2d Sess. 3, reprinted in (1978) U.S. Code Cong. & Ad. News, pp. 4749, 4751. Pan Am's Stop Policy is based on pregnancy and thus, since October 31, 1978, it constitutes per se sex discrimination.
 
 
 27
 B. The Bona Fide Occupational Qualification Defense
 
 
 28
 In view of the Stop Policy's status as per se sex discrimination, Pan Am's justifications must be evaluated in terms of the BFOQ, rather than the Business Necessity defense. See ante at 1301. The two defenses, though related and similar, are not identical. deLaurier v. San Diego Unified School District, 588 F.2d at 678. They must be distinctly applied. Cf. Burwell v. Eastern Air Lines, Inc., 24 Empl.Prac.Dec. (CCH) P 31,213, at 17,379 & n.15, 633 F.2d 361 (4th Cir. 1980) (suggesting that a policy justified by business necessity may not constitute a BFOQ); but cf. Burwell, 458 F.Supp. 474, 496 n.11 (E.D.Va.1978) ("As a practical matter, however, the Court sees little difference between the two tests."), aff'd in part, rev'd in part and remanded, 24 Empl.Prac.Dec. (CCH) P 31,213, 633 F.2d 361 (4th Cir. 1980).
 
 
 29
 We join the Fourth Circuit in adopting the BFOQ standard which the Fifth Circuit developed in Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224 (5th Cir. 1976); Diaz v. Pan American World Airways, Inc., 442 F.2d 385 (5th Cir. 1971); and Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228 (5th Cir. 1969). Arritt v. Grisell, 567 F.2d 1267, 1271 (4th Cir. 1977).
 
 
 30
 According to the court's reasoning in Tamiami,
 
 
 31
 Diaz mandates that the job qualifications which the employer invokes to justify his discrimination must be reasonably necessary to the essence of his business The greater the safety factor, measured by the likelihood of harm and the probable severity of that harm in case of an accident, the more stringent may be the job qualifications designed to insure safe driving.
 
 
 32
 Tamiami, supra at 236. (Emphasis in original.)
 
 
 33
 The second facet of the test was enunciated in Weeks, supra at 235.
 
 
 34
 (A)n employer has the burden of proving that he had reasonable cause to believe, that is, a factual basis for believing, that all or substantially all women would be unable to perform safely and efficiently the duties of the job involved.
 
 
 35
 However, if the employer cannot make this latter showing, it can nonetheless justify a "reasonable general rule" by establishing "that it is impossible or highly impractical to deal with women on an individualized basis." Id. at 235 n.5.
 
 
 36
 The district court specifically found that passenger safety was the essence of Pan Am's business. 437 F.Supp. at 434. It also found that Pan Am had satisfied the Weeks facet of the test by showing that "it is 'highly impractical to deal with (pregnant flight attendants) on an individualized basis' and it has applied a 'reasonable general rule.' " 437 F.Supp. at 435; cf. Burwell v. Eastern Air Lines, Inc., 24 Empl.Prac.Dec. (CCH) P 31,213, at 17,377 & n.6, 633 F.2d 631 (4th Cir. 1980) (holding "trial court clearly wrong in its finding that pregnant flight attendants who will experience abnormal health incidents during their pregnancies can be uniformly identified prior to the onset of such incidents"). The flaw in the district court's standard as it applies to the BFOQ defense is that it requires only that the policy be "reasonable" in light of the safety factor rather than "reasonably necessary." The district court may have reasoned that the safety factor was so significant that any policy which was "reasonably calculated" to further safety was also "reasonably necessary" in light of Pan Am's strict safety obligations to the public.
 
 
 37
 Adoption of such a standard here would unnecessarily broaden the BFOQ defense which the Supreme Court characterized in Dothard v. Rawlinson, 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977), as "an extremely narrow exception to the general prohibition of discrimination on the basis of sex." In light of the district court's factual findings regarding the significance of the safety risk involved in allowing pregnant flight attendants to continue flying, 435 F.Supp. at 420-23 & nn. 10-15, we conclude that Pan Am has shown its Stop Policy to be "reasonably necessary" to passenger safety.
 
 
 38
 Accordingly, we affirm the district court's decision that Pan Am's Stop Policy was justified as a BFOQ.[5]
 
 
 39
 III. Pre-Amendment Legality of Pan Am's Start Policy
 
 A. Prima Facie Sex Discrimination
 
 40
 Pan Am's Start Policy (requiring female flight attendants to wait at least sixty days after delivery to resume their duties), as much as its Stop Policy, is "a restriction on pregnant women's employment opportunities." deLaurier v. San Diego Unified School Dist., 588 F.2d 674, 677 (9th Cir. 1978). Consequently, it has a discriminatory impact on women and is a prima facie violation of Title VII.
 
 B. Business Necessity Defense
 
 41
 The district court noted that the justification for the Start Policy "did not receive extensive attention at trial." 437 F.Supp. at 424. The court referred to the testimony of two doctors who felt that the postpartum medical examination should be delayed until six weeks or more after delivery. Id. A doctor testified on behalf of plaintiffs that he preferred an individualized policy but that he could "see an argument" for putting off the examination until four to six weeks after delivery. Id. The record can be read to support a finding that flight safety requires that flight attendants refrain from work until passing a postpartum examination. While there is no evidence that all women must wait until after the postpartum examination to return to work, the very point of the examination is to assess the risk of disabilities-particularly that of postpartum hemorrhaging. At trial, two doctors testified that until six weeks uterine size and body functions do not sufficiently normalize to permit a reliable judgment on whether a woman is ready to return to work. Until that time, all women risk disability. Pan Am elects to counter that risk with a generalized stop policy. We find no error in that procedure.
 
 
 42
 The district court made no findings about the gravity of the risk to passenger safety of allowing flight attendants to return to work before sixty days after birth, nor did it conclude that Pan Am's Start Policy was necessary in light of that risk. It did not explain why a sixty day period was justified when Pan Am's doctors referred to an examination at six weeks. The mere fact that Pan Am's experts testified that a postpartum examination should occur after "six weeks or more" does not preclude a finding that a sixty day start policy is justified. The district court may have believed that medical uncertainty and deference to the complexity of Pan Am's "ultimate chore of managing risks to passengers," Burwell v. Eastern Air Lines, Inc., 24 Empl.Prac.Dec. (CCH) P 31,213, at 17,379, 633 F.2d 361 (4th Cir. 1980), required it to find that a sixty day start period is justified, even though expert testimony indicated a somewhat shorter period. Accordingly, we remand for a determination of whether Pan Am carried its burden of showing that its sixty day rule was justified as a Business Necessity.
 
 
 43
 IV. Post-Amendment Legality of Pan Am's Start Policy
 
 A. Prima Facie Sex Discrimination
 
 44
 The 1978 Amendment incorporating pregnancy discrimination into Title VII's definition of sex discrimination makes Pan Am's Start Policy facial sex discrimination.
 
 
 45
 B. Bona Fide Occupational Qualification Defense
 
 
 46
 The district court did not make sufficient findings for us to decide whether Pan Am's Start Policy was a BFOQ. We remand for the court to make this determination under the Weeks-Diaz test outlined above.
 
 
 47
 V. Pre-Amendment Legality of Pan Am's Seniority Accrual Policy
 
 A. Prima Facie Sex Discrimination
 
 48
 The district court held that the Supreme Court's analysis in General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) foreclosed Plaintiffs' contention that Pan Am's policy of denying seniority accrual during maternity leaves constituted prima facie sex discrimination under Title VII. 437 F.Supp. at 437. The district court issued a Supplemental Memorandum reaffirming its decision on the Seniority Policy in light of the Supreme Court's intervening opinion in Nashville Gas Company v. Satty, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977).
 
 
 49
 In Satty, the employer required pregnant employees to take a formal leave of absence during which they forfeited their accrued seniority. When an employee returned after such leave, she could get only those positions which no other employee with seniority had requested. The court held that the policy burdened women in a way that men were not burdened and thus that it violated section 703(a)(2) of Title VII. Id. at 139-40, 98 S.Ct. at 349-350. The Satty Court distinguished Gilbert as involving solely the refusal to confer a benefit which men could not obtain. Such a denial of a benefit, as opposed to the imposition of a burden, did not have the effect of depriving women of employment opportunities and thus did not violate section 703(a)(1).
 
 
 50
 In contrast to the policy challenged in Satty, Pan Am's policy does not deprive women of their accumulated seniority, but merely denies continued accrual beyond the first ninety days of maternity leave. The district court, in its Supplemental Memorandum Opinion, noted that seniority is generally earned only for work done. The court concluded that Pan Am's seniority policy is more akin to the denial of a benefit than the imposition of a burden and, therefore, does not constitute a prima facie Title VII violation. 441 F.Supp. at 883. We disagree.
 
 
 51
 The Court in Satty attached considerable weight to the EEOC guidelines dealing with seniority accrual during maternity leave. 434 U.S. at 142 n.4, 98 S.Ct. at 351 n.4. Those guidelines specify that "employment policies and practices involving the accrual of seniority shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities." Id. quoting 29 CFR § 1604.10(b) (1976). Pan Am has established that pregnant flight attendants are sufficiently disabled from performing their emergency safety operations to justify mandatory maternity leave despite its discriminatory impact. Other types of medical or disability leave allow seniority accrual for up to three years. Maternity leave allows only ninety days.
 
 
 52
 Mr. Justice Stevens, in his concurring opinion in Satty, suggested a practical way to distinguish policies which impose burdens, as in Satty, from those which merely deny benefits, as in Gilbert. 434 U.S. at 153-57, 98 S.Ct. at 357-359. He suggested that when "the employer has a policy which adversely affects a woman beyond the term of her pregnancy leave," the employer has imposed a burden. Id. at 155, 98 S.Ct. at 358. The named plaintiffs Margaret Feather and Ute Harriss lost approximately 130 days of seniority. Such lapses in seniority may cause losses of 20 to 40 positions on the seniority roster. 437 F.Supp. at 417. A flight attendant who returns from maternity leave will feel the effects of her lowered position on the seniority roster for the remainder of her employment with Pan Am. Because the plaintiffs lost seniority in relation to those fellow employees who were not required to go on maternity leave, or who took other types of medical or disability leave, plaintiffs' ability to obtain desired positions and working conditions was hampered. We conclude, therefore, that Pan Am's Seniority Policy constituted prima facie sex discrimination.
 
 B. Business Necessity
 
 53
 Because the district court concluded that the Seniority Policy did not have a discriminatory effect on women, it did not reach the question of a Business Necessity justification. Pan Am had the burden of showing that denial of seniority accrual was "necessary to safe and efficient job performance." Dothard v. Rawlinson, 433 U.S. 321, 332 n.14, 97 S.Ct. 2720, 2728 n.14, 53 L.Ed.2d 786 (1977). We remand to the district court to decide, (from the record,) whether Pan Am carried its burden.
 
 
 54
 VI. Post-Amendment Legality of Pan Am's Seniority Accrual Policy
 
 
 55
 Like Pan Am's Stop and Start Policies, the Seniority Policy is expressly based on pregnancy which, after the 1978 amendment, makes the Seniority Policy facial sex discrimination. We remand the question of the post-amendment legality of the Seniority Policy for a determination from the record of whether Pan Am carried its burden of justifying its policy as a Bona Fide Occupational Qualification.
 
 
 56
 Affirmed in part, reversed in part, and remanded.
 
 SCHROEDER, Circuit Judge, dissenting:
 
 57
 The three challenged Pan American Employment Policies apply only to women. They prevent women who are pregnant from working as flight attendants both months before any increase in weight or girth would interfere with performance of their duties and months after childbirth. For the entire period of this mandatory leave, the women do not accumulate seniority and hence must return to work in a much less favorable position than employees who may have taken leave for other medical reasons.
 
 
 58
 Pregnancy is the only physical condition which prompts such restrictions. Persons with any other physical condition which might interfere with performance of duties are permitted to fly if, upon a visual inspection prior to takeoff, they do not appear to be incapacitated. The employee making the visual inspection has no medical training. Pan American does not even require an annual physical examination of its flight attendants.
 
 
 59
 Why is pregnancy alone treated so differently from all other physical conditions? This is a question which Pan American has not answered and the majority opinion does not address. The majority correctly concludes that the policies are all prima facie violations of Title VII, but goes on to hold in effect that there is some basis in the record to justify the policies. I cannot agree.
 
 I. STOP POLICY
 
 60
 The first policy is the so called "mandatory stop" policy. This rule requires a flight attendant to stop working as soon as she learns she is pregnant, which is generally before the end of the first trimester of pregnancy. The district court actually found, however, that most women during the early months of pregnancy are able to perform all of the ordinary duties required of a flight attendant. Harriss v. Pan American World Airways, Inc., 437 F.Supp. 413, 422 (N.D.Cal.1977). The Fourth Circuit has recently held that Eastern Air Lines' imposition of a similar mandatory stop rule during the first trimester violated Title VII. Burwell v. Eastern Air Lines, 633 F.2d 361 (4th Cir. 1980) (en banc).
 
 
 61
 The justification offered by Pan American, accepted by both the district court and the majority opinion, is that the rule is necessary for safety. The argument is that since a pregnant woman runs a small risk of miscarriage during flight, and since some pregnant women suffer from nausea and fatigue, a pregnant flight attendant might become disabled during an emergency. If that happened, the safety of the passengers could be endangered. Pan American concludes that passengers are safer if pregnant flight attendants are not permitted to work.
 
 
 62
 The flaw in Pan American's logic is the assumption that all the flight attendants who are permitted to fly in the place of grounded, pregnant stewardesses are physically better able to perform their duties than pregnant stewardesses. Since the airline makes no attempt to prevent flight attendants with other potentially disabling conditions from flying, that is an assumption which is certainly not borne out in this record. If, for example, persons suffering from ulcers, hernias, colitis, high blood pressure or heart disease are less likely to become incapacitated during flight than women in the early months of pregnancy, there is nothing in this record to prove it.
 
 
 63
 The leading employment discrimination cases have recognized that to justify a discriminatory policy as either a bona fide occupational qualification or a business necessity, the employer must at least show both a valid purpose and that the policy achieves that purpose: i. e. that there is a factual basis to believe all or substantially all unable to do the job are within the class discriminated against. See Blake v. City of Los Angeles, 595 F.2d 1367, 1376 (9th Cir. 1979), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980); Arritt v. Grisell, 567 F.2d 1267, 1271 (4th Cir. 1977); Diaz v. Pan American World Airways, Inc., 442 F.2d 385 (5th Cir.), cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971); Robinson v. Lorillard Corp., 444 F.2d 791, 798 (4th Cir.), cert. dismissed, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228 (5th Cir. 1969). Here safety is the claimed purpose, but the policy in question has not been shown to serve it. As one district court has stated in a similar case, "the incantation of a safety rationale is not an abracadabra to which this court must defer judgment." Maclennan v. American Airlines, Inc., 440 F.Supp. 466, 472 (E.D.Va.1977).
 
 
 64
 If Pan American desires its claimed safety precautions to withstand attack, it should design procedures, reviews, and tests which measure the ability of all flight attendants who have medical conditions which might affect their performance in an emergency situation. Pan American would then be measuring the person for the job and not the person in the abstract. See Dothard v. Rawlinson, 433 U.S. 321, 331-32, 97 S.Ct. 2720, 2728, 53 L.Ed.2d 786 (1977); Griggs v. Duke Power Co., 401 U.S. 424, 436, 91 S.Ct. 849, 856, 28 L.Ed.2d 158 (1971). This requirement of equal treatment of all persons who are similar in their ability or inability to work is specifically mandated by the 1978 pregnancy amendment to the Civil Rights Act, 42 U.S.C. § 2000e(k), and supported by the EEOC guidelines.[1]
 
 II. START POLICY
 
 65
 The second Pan American pregnancy policy is the so called "mandatory start" policy which does not permit stewardesses, regardless of their individual condition, to return to work for a minimum period of 60 days following childbirth. Here the employer has not even articulated a justification for the policy in terms of its own business requirements. It is thus not possible to determine whether the policy is either sufficiently compelling or reasonably necessary. Diaz v. Pan American, 442 F.2d 385 (5th Cir.), cert. denied, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). See also Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224 (5th Cir. 1976). The record is devoid of any factual basis for finding that women are unable to perform their duties until 60 days after childbirth. Nor has the employer shown why it does not make individual determinations concerning a woman's ability to return to work before 60 days. The failure to make such a showing should in and of itself invalidate this discriminatory practice.[2] Blake v. City of Los Angeles, supra (employer must show that there are no acceptable alternative policies); Weeks v. Southern Bell Tel. & Tel. Co., 408 F.2d 228 (5th Cir. 1969).[3]
 
 
 66
 The only evidence in the record on the 60-day rule is, as the majority acknowledges, testimony about when a post-partum examination should occur. There is no evidence that all women must wait until after the post-partum examination to return to work. Moreover, what little evidence there is pits the testimony of one doctor, that the examination should take place at four weeks (28 days), against that of another doctor that it should be at least six weeks (42 days). There is thus no support for a finding that the post-partum examination should be postponed 60 days, much less a finding that all women should wait at least 60 days until after childbirth to return to work. Yet the majority inexplicably returns the matter in order to permit the trial court to make further findings, apparently to justify the wholly unjustifiable 60 days.
 
 III. SENIORITY POLICY
 
 67
 The third pregnancy policy prevents flight attendants during the mandatory maternity leave from accruing seniority after 90 days, even though persons on all other medical or disability leaves are permitted seniority accrual up to three years. The Fourth Circuit in Burwell ruled unanimously that a seniority policy which treats pregnant flight attendants less favorably than flight attendants with other medical disabilities is unlawful. Burwell v. Eastern Air Lines, Inc., 633 F.2d 361 (4th Cir. 1980) (en banc). See also Nashville Gas Co. v. Satty, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977). The majority recognizes that the trial court should have held that this policy was prima facie discriminatory. What the majority fails to recognize is that the employer did not even attempt to justify the rule as a business necessity. Yet, again the matter is remanded for findings on a record which permits only one conclusion: the invalidity of the rule.
 
 
 68
 Burwell and Satty were decided under the law prior to the 1978 pregnancy amendment to the Civil Rights Act. The Act now expressly requires women affected by pregnancy, childbirth or other related medical conditions to be treated "the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work " 42 U.S.C. § 2000e(k). Pan American has conceded that it may not enforce this policy under the new law. It has notified the Court that, as of October 31, 1978, it began allowing flight attendants to accrue full seniority during the entire period of their leaves. The majority ignores the clear language of the statute and the legal result which should flow from it. Instead, the majority remands the question to the district court when, in fact on this subject, there is nothing further for the district court to do.
 
 
 69
 I would therefore reverse and require the district court to issue an injunction against further enforcement of the policies and to consider appropriate damages.
 
 ORDER
 
 70
 The petition for rehearing filed by Pan American World Airways, Inc., is denied. On remand, the district court should consider Pan Am's contention that on October 31, 1978, it modified its seniority policy to allow accrual of seniority during a flight attendant's maternity leave.
 
 
 
 [1]
 The district court, in a Supplemental Memorandum, reaffirmed its Seniority Policy holding in light of the Supreme Court's intervening decision in Nashville Gas Company v. Satty, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977). Harriss v. Pan American World Airways, Inc., 441 F.Supp. 881 (N.D.Cal.1977)
 
 
 [2]
 The BFOQ defense is contained in the statute itself and provides that "it shall not be an unlawful employment practice for an employer to employ employees on the basis of his sex in those instances where sex is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business." 42 U.S.C. § 2000e-2(e). The Business Necessity defense, by contrast, has no specific basis in Title VII, having evolved primarily from Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) as a defense to claims that facially neutral employment practices have discriminatory effects. When a facially neutral practice is challenged for its disparate impact, the employer's justification is not that "sex is a bona fide occupational qualification" but that the practice is not based on sex at all but on some nondiscriminatory business purpose. The Fifth Circuit expressly adopted this interpretation in Garcia v. Gloor, 609 F.2d 156, 163 (5th Cir. 1980):
 Both the BFOQ and BND (Business Necessity Defense) are defenses but a BFOQ is a warrant for affirmative deliberate discrimination while a BND is a defense to the prima facie case made when an apparently neutral employment practice is shown to have a discriminatory effect.
 This distinction may also be reasonably inferred from the Supreme Court's analysis in Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977) which involved a Title VII challenge to one employment policy based expressly on sex and another which was facially neutral but which had a disparate impact on women. The Court considered only the BFOQ defense in assessing the legality of the facially discriminatory policy and only the Business Necessity Defense for the facially neutral policy.
 
 
 [3]
 The district court required Pan Am to show that its Stop Policy was "necessary to the safe and efficient operation of a business." 437 F.Supp. at 432. This is the typical standard for the Business Necessity defense. See, e.g., Dothard v. Rawlinson, 433 U.S. 321, 332 n.14, 97 S.Ct. 2720, 2728 n.14, 53 L.Ed.2d 786 (1977) and Robinson v. Lorillard Corp., 444 F.2d 791, 798 (4th Cir. 1971). In enumerating the elements of the required showing, however, the district court employed the standard for the BFOQ defense developed by the Fifth Circuit. See Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224 (5th Cir. 1976). 437 F.Supp. at 432-33
 
 
 [4]
 The Tenth Circuit acknowledged this in applying the Business Necessity defense. Spurlock v. United Airlines, 475 F.2d 216 (10th Cir. 1976). Federal courts have uniformly recognized the relevance of the safety factor in assessing whether an employment policy is justified as a BFOQ. Arritt v. Grisell, 567 F.2d 1267 (4th Cir. 1977); Usery v. Tamiami Trail Tours, Inc., 531 F.2d 224 (5th Cir. 1976); Hodgson v. Greyhound Lines, 499 F.2d 859 (7th Cir. 1974)
 
 
 [5]
 At oral argument, Appellants abandoned their contention that Pan Am's avowed concern about pregnant flight attendants' physical ability was merely a pretext concealing a discriminatory intent. Consequently, we do not consider that issue here
 
 
 [1]
 The EEOC has published its position on the effect of the pregnancy amendment to the Civil Rights Act in a question and answer format. As to the equal treatment requirement, the guidelines state:
 Question 6. What procedures may an employer use to determine whether to place on leave as unable to work a pregnant employee who claims she is able to work or deny leave to a pregnant employee who claims that she is disabled from work?
 Answer: An employer may not single out pregnancy-related conditions for special procedures for determining an employee's ability to work. However, an employer may use any procedure used to determine the ability of all employees to work (I)f an employer allows its employees to obtain doctor's statements from their personal physicians for absences due to other disabilities or return dates from other disabilities, it must accept doctor's statements from personal physicians for absences and return dates connected with pregnancy-related disabilities.
 
 
 [29]
 C.F.R. § 1604-Appendix (1979)
 
 
 [2]
 As to both Pan American's minimum 60-day return requirement and seniority policy, the EEOC position would be as follows:
 Question 7. Can an employer have a rule which prohibits an employee from returning to work for a predetermined length of time after childbirth?
 Answer: No.
 Question 10. May an employer's policy concerning the accrual and crediting of seniority during absences for medical conditions be different for employees affected by pregnancy-related conditions than for other employees?
 Answer: No. An employer's seniority policy must be the same for employees absent for pregnancy-related reasons as for those absent for other medical reasons.
 
 
 [29]
 C.F.R. § 1604-Appendix (1979)
 
 
 [3]
 Indeed, the record actually shows that both plaintiffs' and Pan American's experts agree that the decision to return to work is a highly individual medical judgment