Charles G. CRISWELL, Albert Ron, Rulon H. Starley, Plaintiffs-Appellees/Cross-Appellants,

v.

WESTERN AIRLINES, INC., Defendant-Appellant/Cross-Appellee,

Joan Celia Lavine, Non-Party Appellant.

Westcot B. STONE III, Bill H. Pelton, Jack R. Dean, Norval P. Cavett, Alan L. McLaren, Brentnall J. Higgs, Henry J. Wiegand, Albert J. White, and Robert L. Butler, Plaintiffs-Appellees,

v.

WESTERN AIRLINES, INC., Defendant-Appellant.

Western Airlines, Inc., Third-Party Complainant/Appellant,

Air Line Pilots Association International, etc., et al., Third-Party Defendants/Appellees.

Nos. 81–5536, 81–5619, 81–6013, 81–6023 and 82–5082.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1982.

Decided June 28, 1983.

Raymond C. Fay, Haley, Bader & Potts, Chicago, Ill., Robert S. Venning, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Jay P. Levy-Warren, Michael E. Abram, Cohen, Weiss & Simon, New York City, for appellees.

Donald K. Hall, Darling, Rae & Gute, Los Angeles, Cal., for Western Air Lines, Inc.

Joan Celia Lavine, Los Angeles, Cal., pro se.

Before KENNEDY, TANG and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

Western Airlines, Inc. appeals two adverse decisions in which the district court found that it had violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. The trial court determined that Western violated the ADEA when it (1) refused to allow DC–10 captains nearing the age of sixty to downbid to the position of flight engineer and (2) imposed a mandatory retirement age of sixty on flight engineers as a matter of company policy. The plaintiff airline pilots alleged both discriminatory treatment and disparate impact. Western raised four defenses: first, that denial of the downbids could not give rise to an ADEA claim as a matter of law; second, that the age sixty requirement was a bona fide occupational qualification and, third, was justified by reasonable factors other than age, 29 U.S.C. § 623(f)(1); and, finally, that its policies were prompted by business necessity. In the first case here before us, *Criswell v. Western Airlines, Inc.,* 514 F.Supp. 384 (C.D.Cal.1981), a jury returned substantial damage awards for all three plaintiffs, and the court granted individual and systemwide injunctive relief. In a subsequent case, *Stone v. Western Airlines, Inc.,* No. 81–5521, the district court gave collateral estoppel effect to the *Criswell* judgment in granting a preliminary injunc-

tion which is also before us on this appeal. We affirm the district court in both cases.

FACTS

In 1977 when this case began, Western Airlines required that all three members of a DC–10 flight deck crew retire at age sixty. The captain and the co-pilot (also known as the first officer) were required to do so under Federal Aviation Administration regulations. *Aldendifer v. Continental Air Lines,* 650 F.2d 171 (9th Cir.1981); *Keating v. Federal Aviation Administration,* 610 F.2d 611 (9th Cir.1979); 14 C.F.R. § 121.383(c). The third crew member, known as the flight engineer or second officer, was required to retire by Western's policies. This retirement was not mandated by the FAA.

In September 1977, plaintiff Starley was fifty-nine years old and a DC–10 captain who had thirty-two years of seniority as a pilot with Western. He entered a downbid for a position as second officer (flight engineer). Starley's seniority placed him near the head of the pilots' list.[1] The position Starley bid for was awarded on the basis of seniority under Western's collective bargaining agreement with the Air Line Pilots Association (ALPA), which represented the pilots. The bid was awarded to him immediately, but six months later Western canceled it. In November 1977, Captain Charles Criswell, who had worked for Western for forty-one years, thirty-seven of them as a pilot, submitted a downbid to move from his position as a DC–10 captain to that of DC–10 second officer, timed to take place just prior to his sixtieth birthday. This bid was denied. Plaintiff Albert Ron was a "career" second officer, having been such for twenty-three of the thirty-two years during which he had served the airline. Prior to his sixtieth birthday, he gave Western written notice of his intention to remain at work in his position beyond his sixtieth birthday.

In February 1978, Western informed all three plaintiffs that they would be required

---

1. All three positions, captain, co-pilot, and flight engineer were on one unified "pilots list" for bidding purposes under the seniority system. 514 F.Supp. at 391 & n. 10.

to retire at the age of sixty as established in the pilot pension plan. Claiming that the denial of downbids violated the Pilot Agreement, Criswell and Starley pursued their collectively bargained for grievance procedures. Their grievances were heard by the Western Air Lines Pilots System Board of Adjustment, which, in a decision accompanied by a vigorous dissent, denied them relief on the basis that, although the language of the agreement would have permitted their bids, such bids were never contemplated or intended by the parties. The board held that the parties had intended to permit downbidding only "in rare and carefully defined circumstances."

Before the System Board ruled, the federal court action had been filed. All plaintiffs sought preliminary injunctions. As to plaintiff Ron, equitable relief was granted and he has remained employed as a second officer with Western throughout the litigation of this case. Criswell and Starley were retired on their sixtieth birthdays. After a fifteen-day trial, a jury returned verdicts for all three plaintiffs—for Criswell in the amount of $60,394; for Starley in the amount of $52,099; and for Ron, who had continued to work, in the amount of $5,000. The jury also found on a special interrogatory that Western's violations were "willful" with respect to each plaintiff.

Six months later, after additional hearings and briefing, the trial court filed an opinion and order which also granted the equitable relief originally sought. *Criswell v. Western Air Lines,* 514 F.Supp. at 387–97. The court ordered Western to reinstate Criswell and Starley with full seniority, to award them positions as second officers, to continue Ron in his position, and not to require their retirement prior to age seventy. The systemwide relief enjoined Western from its previous practices with regard to mandatory retirement of second officers at age sixty, age-based refusal of downbids from captains or first officers seeking second officer positions, and further viola-

tion of the ADEA.[2] The court also awarded prejudgment interest, liquidated damages, damages, costs and fees.

Six months after entry of judgment in *Criswell, Stone* was filed. Eight of its nine plaintiffs were DC–10 captains for Western, while the ninth, Albert White, was a second officer. They alleged that Western's refusal to continue them in employment as second officers after their sixtieth birthdays violated the ADEA and sought preliminary injunctions. The court denied injunctions to the pilots but granted one to the second officer, White. In granting relief, the court gave collateral estoppel effect to the *Criswell* judgment. On appeal Western's position with regard to White is legally identical to its position with regard to plaintiff Ron in *Criswell.*

ANALYSIS

On this appeal Western argues (1) that the district court failed to accord proper deference to the System Board determination that the collective bargaining agreement did not permit the downbids attempted here, thereby depriving the airline of an absolute statutory exemption, (2) that its age sixty requirement for second officers is a bona fide occupational qualification (BFOQ), and (3) that the jury was misinstructed in a number of respects. In *Criswell,* Western also appeals the failure to join ALPA, the grant of systemwide relief, and the awards of attorneys' fees and prejudgment interest. In *Stone,* it appeals as well the grant of injunctive relief to the second officer and the denial of injunctive relief which it sought against ALPA.

I. The Deference Due the System Board

■ Western first contends that the bona fide seniority system set up by the collective bargaining agreement between itself and the Air Line Pilots Association will not permit downbids of the type submitted by Criswell and Starley. It insists that this matter was not open for *de novo* investigation by the district court because the Sys-

---

**2.** Equitable relief for all parties other than named plaintiffs in the two companion cases which make up this appeal was stayed by the

district court pending the outcome of the appeal.

tem Board of Adjustment had already made that determination in 1978. The airline urges that the System Board has exclusive jurisdiction to interpret the agreement and that its decision may not be reconsidered or collaterally attacked in court. Reliance on this argument is misplaced. The right of the plaintiffs to go before the System Board is contractual, arising out of their collective bargaining agreement. Their right to come before this court is statutory, arising out of the ADEA. As the Supreme Court has said in similar circumstances:

> The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

*Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 745–46, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981), *quoting with approval Alexander v. Gardner-Denver,* 415 U.S. 36, 49–50, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974).

Both *Alexander* and *Barrentine* are immediately relevant to the issue in this case. While *Alexander* dealt with Title VII, substantive rights arising under the ADEA are to be similarly construed. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979); *Sutton v. Atlantic Richfield Co.,* 646 F.2d 407, 411 (9th Cir.1981). *Barrentine* extended *Alexander* into the related Fair Labor Standards Act (FLSA) context; the remedial and procedural structure of the FLSA has been incorporated into the ADEA. *Lorillard v. Pons,* 434 U.S. 575, 578, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978).

The factors which initially prompted the Supreme Court to reject deference to arbitral decisions in these instances apply squarely to the facts of this situation. In refusing to defer, the Court first noted its special responsibilities and plenary power to enforce the statute. *Alexander,* 415 U.S. at 44–45, 94 S.Ct. at 1017–18. That same responsibility exists with regard to the

ADEA. It turned next to the dangers of allowing an arbitrator to make legal and factual rulings dispositive of statutory rights when such a person, first, is often not trained as a lawyer, *id.* at 57 n. 18, 94 S.Ct. at 1024 n. 18; *Barrentine,* 450 U.S. at 743 n. 21, 101 S.Ct. at 1446 n. 21; second, is under an obligation to apply "the law of the shop rather than the law of the land"; and third, is required to interpret the agreement in accordance with the intent of the parties rather than the intent of Congress. *Alexander,* 415 U.S. at 53, 57, 94 S.Ct. at 1022, 1024; *Barrentine,* 450 U.S. at 743–44, 101 S.Ct. at 1446. In the instant case, the System Board concerned itself solely with the law of the shop and the intent of the parties; ADEA rights did not enter into its consideration at all. Last, the Supreme Court noted the lesser powers of arbitral boards to gather reliable evidence and do thorough fact-finding and adduced those as reasons not to be bound by the factual record below when a party comes into federal court asserting a statutory right. *Alexander,* 415 U.S. at 57–58, 94 S.Ct. at 1024. Our case illustrates the wisdom of that policy. The evidence before the System Board on the question of how and whether Western pilots practiced downbidding was miniscule when compared to that presented to the district court after the plaintiffs had exercised their federal discovery rights.

*Barrentine* and *Alexander* do not, however, signify the end of the long-standing policy that federal courts defer to the decisions of labor arbitrators. The Supreme Court also determined that arbitral decisions might come into evidence and be accorded such weight as the trial court deemed appropriate. It further said:

> We adopt no standards as to the weight to be accorded an arbitral decision since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective bargaining agreement that conform substantially with [the statute], the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimi-

nation, and the special competence of particular arbitrators.

*Barrentine,* 450 U.S. at 743 n. 22, 101 S.Ct. at 1446 n. 22, *quoting with approval Alexander,* 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21. Here the district court allowed into evidence the board's determination that downbidding was not permitted under the collective bargaining agreement and instructed the jury that it was a "reasonable factor other than age." This conforms fully with *Alexander* and *Barrentine.* In these circumstances the decision of the board should not have been accorded greater weight.

In fact, the instruction was more favorable to Western than the evidence warranted. The plaintiffs adduced a great deal of evidence tending to show that Western did not administer its downbidding system in an age-neutral fashion, but rather that it routinely granted exceptions for younger pilots. In such a situation, the determination of the board that the downbids requested were not generally available under the agreement is merely evidence offered to rebut plaintiffs' contentions of disparate treatment of older pilots in Western's administration of the downbidding system.[3]

## II. The BFOQ Defense

Western contends that the district court did not correctly understand the law of the circuit with regard to the bona fide occupational qualification defense which the defendant attempted to raise in this case. Therefore, it argues, the court misinstructed the jury and improperly denied Western's motion for judgment notwithstanding the verdict.

### A. *The Jury Instruction*

■ The challenged instruction reads:

If you find that plaintiffs have persuaded you by a preponderance of the evidence that their involuntary retirements were the result of policies in which

age discrimination was a determining factor, then you must consider defendant's defense that age is a "bona fide occupational qualification" for its Second Officers (flight engineers). This defense is usually abbreviated "BFOQ". The BFOQ defense is available only if it is reasonably necessary to the normal operation-essence-of defendant's business. In this regard, I instruct you that the normal operation-essence-of Western's business is the safe transportation of air passengers.

The burden of proof to show a BFOQ is on the defendant. If defendant establishes such a BFOQ by a preponderance of the evidence, then its age discrimination is lawful under the ADEA.

One method by which defendant Western may establish a BFOQ in this case is to prove

(1) that in 1978, when these plaintiffs were retired, it was highly impractical for Western to deal with each Second Officer over age 60 on an individualized basis to determine his particular ability to perform his job safely, and

(2) that some Second Officers (flight engineers) over age 60 possess traits of physiological, psychological, or other nature which preclude safe and efficient job performance that cannot be ascertained by means other than knowing their age.

In evaluating the practicability to defendant Western of dealing with Second Officers over age 60 on an individualized basis, with respect to the medical testimony you should consider the state of the medical art as it existed in July 1978.

Western objects to this instruction on five grounds. (1) It argues that the court erred in instructing that the BFOQ defense was available only if the defendant's behavior was "reasonably necessary" and contends instead that a "rational basis in fact"

---

**3.** Our ruling on this issue makes it unnecessary to reach Western's argument dealing with the bona fide seniority system exemption provided by 29 U.S.C. § 623(f)(2). The question of the meaning of the collective bargaining agreement's provisions with regard to what forms of downbidding were permitted was in effect submitted to the jury.

would have been sufficient. (2) It objects that no elucidation of the term "reasonably necessary" was given to the jury, arguing that such is required since it is a legal term of art. (3) It objects to the description of the "normal-operation-essence" of its business as "the safe transportation of air passengers," contending that it is statutorily bound to a much higher standard of safety. (4) It objects further that the term "normal" might have been understood by the jury to encompass only routine operations rather than including periods of emergency. (5) Finally, it objects to the entire last two paragraphs, which guide the jury in how Western might establish the BFOQ defense, arguing that it should not have been required to reconstruct what it calls "the medical rationale underlying the FAA's Age 60 Rule."

In *Harriss v. Pan American World Airways, Inc.,* 649 F.2d 670, 676 (9th Cir.1980), this circuit adopted the two-pronged test then in use in the Fourth and Fifth Circuits for establishing the BFOQ defense. First,

"... the job qualifications which the employer invokes to justify his discrimination must be *reasonably necessary* to the essence of his business .... The greater the safety factor, measured by the likelihood of harm and the probable severity of that harm in case of an accident, the more stringent may be the job qualifications designed to insure [safety]."

*Id., quoting Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224, 236 (5th Cir.1976) (emphasis in original).

In formulating the "reasonably necessary" standard, *Harriss* specifically rejected a test similar to the one advanced by the defendants here. The *Harriss* trial court found that Pan American had formulated "a *reasonable* general rule" by which it excluded all female flight attendants from working during pregnancy on the grounds of their possible disability during an in-

flight emergency. The Court of Appeals said:

> The flaw in the district court's standard as it applies to the BFOQ defense is that it requires only that the policy be "reasonable" in light of the safety factor rather than "reasonably necessary ...."

> Adoption of such a standard here would unnecessarily broaden the BFOQ defense which the Supreme Court characterized in *Dothard v. Rawlinson,* 433 U.S. 321, 334 [97 S.Ct. 2720, 2729, 53 L.Ed.2d 786] (1977), as "an extremely narrow exception to the general prohibition of discrimination on the basis of sex."

*Harriss,* 649 F.2d at 677. Thus, it is clear that the *Criswell* jury instruction tracks both the language and the spirit of the circuit law on this matter. Western's contentions that the "rational basis in fact" standard should have been adopted are in error.[4] We also reject Western's argument that, once included in the instructions, the term "reasonably necessary" needed definition as a legal term of art. Western rests on *Harriss* as authority for that idea; however, *Harriss* stands only for the proposition that what is "reasonable" may not be "reasonably necessary." *Id.* It does not indicate that either phrase has a legal definition apart from its ordinary sense.

Western also cites *Harriss* as authority for its contention that the district court erred in describing the "normal-operation-essence" of its business as "the safe transportation" of passengers, contending instead that the language of the statute holding it to "the highest possible degree of safety in the public interest" should have been given. In *Harriss* the district court made a finding that Pan American had a duty to operate its business with the "highest degree of safety," 437 F.Supp. 413, 434 (N.D.Cal.1977), and this circuit affirmed the findings as not clearly erroneous. *Harriss,*

---

**4.** It is only in the *second* prong of the BFOQ defense that a standard similar to "rational basis in fact" is applied. In addition to showing that its general rule is reasonably necessary, an employer must also establish that there is a "factual basis for believing" that

almost all older persons cannot perform adequately *or* that it is not practical to distinguish between those who can and those who cannot. *E.E.O.C. v. County of Santa Barbara,* 666 F.2d 373, 376 (9th Cir.1982). *See infra* at 551.

649 F.2d at 675. Such an affirmance does not mandate the use of that phraseology in jury instructions.

*Harriss* does indicate the potential tension between the obligations of a public carrier to operate safely, and the requirement of the ADEA that an employer establish a BFOQ defense as "reasonably necessary." The district court struck a proper balance here by describing as the essence of Western's business "the *safe* transportation" of passengers and by reiterating within the same instruction that it was necessary that second officers over the age of sixty "perform their jobs *safely*" and that their job performance be "*safe* and efficient." (emphasis added). No more was required. As for the objection to the use of the term "normal," Western offered considerable evidence at trial dealing with emergencies. The jury was thus aware that the "normal" performance of the second officer's duties encompassed dealing with emergency situations.

With regard to Western's objections to the last three paragraphs, we turn again to *Harriss* and the second prong of the BFOQ defense which it adopted. Once it has been established that an employer's discriminatory requirement is "reasonably necessary," the employer must still show that

> there is a factual basis for believing that all or substantially all persons over a certain age would be unable to perform the duties of the job safely and efficiently or that it is impossible or impractical to ascertain the difference between older employees who can and cannot perform the job safely.

*E.E.O.C. v. County of Santa Barbara,* 666 F.2d 373, 376 (9th Cir.1982); *Harriss,* 649 F.2d at 676; *Tamiami,* 531 F.2d at 236; *see also EEOC v. County of Los Angeles,* 706 F.2d 1039, 1042 (9th Cir.1983). The final three paragraphs of the instruction meet this standard quite adequately. It was unnecessary and would have been improper to embody in the jury instructions the "medical rationale underlying the FAA's Age Sixty Rule" since the agency has never applied that rule to second officers, the only group

against whom the BFOQ defense was raised. Western introduced evidence supporting its own contentions that the rule should be so applied, advanced that contention in cross-examination, and argued it to the jury. This instruction told the jury how to weigh the evidence. It should have done no more.

B. *The Denial of Judgment Notwithstanding the Verdict*

After the jury had returned its verdict for the plaintiffs, Western once again asserted its BFOQ defense in the form of a motion for judgment notwithstanding the verdict. Essentially, the airline asked the trial court and now asks this court to set the safety standard "reasonably necessary" for it to observe at the level of "the highest degree of safety in the public interest," and then to reweigh the evidence which it presented below as to the functions performed by the second officer as one-third of what it styles the vital "pilot organism." Since we have already rejected the formulation of the safety standard Western advances, it remains only to determine whether the trial court properly denied judgment n.o.v. on the basis of current BFOQ law.

■ A trial court may appropriately grant judgment n.o.v. only when the evidence " 'viewed most favorably to the party against whom the motion is directed cannot support a verdict in that party's favor.' " *Naton v. Bank of California,* 649 F.2d 691, 697 (9th Cir.1981) (citation omitted). The standard of review at the appellate level is virtually identical; a verdict in the plaintiff's favor will be upheld if supported by substantial evidence. *Kaplan v. Burroughs Corp.,* 611 F.2d 286, 290 (9th Cir.1979), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980).

■ Substantial evidence supports this jury verdict. The plaintiffs presented two well-qualified experts who testified that Western's age sixty policy was not necessary to assure that the tasks involved in the position of second officer would be performed safely. They testified further that present-day diagnostic techniques and the

current level of medical knowledge make possible individual determinations of whether a second officer over sixty possesses the health and can maintain the safety standards necessary aboard a large commercial aircraft. Testimony about the effectiveness of Western's evaluations, checkups and simulator training for individual second officers was before the jury, as well as testimony that there is always another flight crew member aboard who has been trained to perform the second officer's duties in the event of incapacitation. There was evidence that although there have been accidents arising out of pilot incapacitations, there has never been one caused by the disability of a second officer. The jury heard testimony that Western itself allows a captain under the age of sixty who cannot, for health reasons, continue to fly as a captain or co-pilot to downbid to a position as second officer. When the evidence showed all this, as well as the fact that half the pilots flying in the United States are flying for major airlines which do not require second officers to retire at the age of sixty, and that there are over 200 such second officers currently flying on wide-bodied aircraft, the trial court could not, as a matter of law, have determined that this jury was incorrect when it also decided that retirement at the age of sixty was not a BFOQ for second officers. The district court correctly denied the motion for judgment n.o.v.

III. The Other Jury Instructions

Western challenges a number of the other instructions given. The standard of review applicable is whether the giving or refusing of particular instructions, construed in the light of the instructions as a whole, was prejudicial. *Kelly v. American Standard, Inc.,* 640 F.2d 974, 985 (9th Cir. 1981); *Laugesen v. Anaconda Co.,* 510 F.2d 307, 315 (6th Cir.1975).

A. *Business Necessity*

█ Western challenges the trial court's business necessity instruction. Business necessity may be invoked as an affirm-

ative defense to justify the retention of a rule that is apparently neutral but has a disparate impact on the basis of race, sex or age. Western's rule against downbidding had a disparate impact on younger and older pilots. Although it forbade the movement of both to lower positions, it operated also to deprive the older pilot of an opportunity for continued employment, while having no such effect on the younger pilot. Western attempted to justify its rule on the ground that the inferior position requested by the plaintiffs, that of second officer, could only *safely* be filled by someone less than sixty years of age. To reach its overall verdict, however, the jury must necessarily have determined that the age restriction on second officers was not supportable as a bona fide occupational qualification, a defense which Western asserted on the basis of this identical safety rationale. The jury finding deprives Western's only ground for claiming business necessity of any legitimacy, and renders Western's various objections to the wording of the business necessity instruction irrelevant.

B. *Reasonable Factors Other Than Age*

█ Western argues that the district court erred in instructing the jury that the defendant had the burden of proving "by a preponderance of the evidence" that its decision refusing to allow Criswell and Starley to downbid to position of second officer was motivated by "reasonable factors other than age." It urges that instead the *McDonnell Douglas* test of articulation of "some legitimate, nondiscriminatory reason" should have been used. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Western confuses the elements of and burdens borne in the case-in-chief and those of an affirmative defense. The "reasonable factors" defense appears alongside the BFOQ exception in the ADEA, 29 U.S.C. § 623(f), and is an affirmative defense for which the employer bears the burden of proof.

29 U.S.C. § 623(f) provides *affirmative defenses* to an employer which in relevant part are as follows:

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

(1) to take any action otherwise prohibited under [the sections specifying prohibited employer practices] ... where the differentiation is based on *reasonable factors other than age;*

.     .     .     .     .

(3) to discharge or otherwise discipline an employee for good cause.

*Sutton v. Atlantic Richfield,* 646 F.2d 407, 408 n. 2 (9th Cir.1981) (emphasis added). *See also E.E.O.C. v. County of Santa Barbara,* 666 F.2d 373, 375 & n. 6 (9th Cir.1982); *Marshall v. Baltimore & Ohio Railroad,* 461 F.Supp. 362, 372 (D.Md.1978), *modified,* 632 F.2d 1107 (4th Cir.1980), *cert. denied,* 454 U.S. 825, 102 S.Ct. 113, 70 L.Ed.2d 98 (1981); E.E.O.C. Guidelines, 29 C.F.R. § 1625.7(e) (1983) ("... the employer bears the burden of showing that the 'reasonable factor other than age' exists factually."); Wage and Hour Division Guidelines, 29 C.F.R. § 860.103(e) (1982) (reasonable factors other than age exception "must be construed narrowly, and the burden of proof ... will rest on the employer"); *see Udall v. Tallman,* 380 U.S. 1, 4–18, 85 S.Ct. 792, 795–802, 13 L.Ed.2d 616 (1965) (counseling deference to agency interpretations). *Cf. Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2228–29, 41 L.Ed.2d 1 (1974) (under FLSA defendant claiming exception to statute has burden of proving exception).

We recognize that the Fifth Circuit's decision in *Marshall v. Westinghouse Elec. Corp.,* 576 F.2d 588 (5th Cir.1978), is not in accordance with our analysis here. In the context of a disparate treatment claim, that court treated the reasonable factors other than age defense as an analog to the legitimate, non-discriminatory reason rebuttal developed in *McDonnell Douglas.* Since we do not believe that a statutory exception may be properly analogized to the second stage of the case-in-chief under a disparate treatment theory, we decline to follow the Fifth Circuit's reasoning.

Western's objection to treating the System Board decision as a "contention" rather than granting it greater weight is dealt with in the first section of this opinion; the trial court's decision was proper. The language of Instruction 30, which told the jury that Western's denial of the downbids because they violated specific provisions of the Pilot Agreement was a "reasonable factor other than age," was totally adequate.

■ Also within Instruction 30, the jury was instructed:

[Y]ou must determine whether, taking the evidence as a whole, age was a substantial and determinative factor—in Western's refusal to allow either plaintiff to work as a Second Officer.

Western argues that the use of the phrase "a substantial and determinative factor" without further elaboration and definition was error since this court has recently held that the term is not self-explanatory. *Cancellier v. Federated Department Stores,* 672 F.2d 1312, 1316 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *Kelly v. American Standard,* 640 F.2d 974, 984–85 (9th Cir.1981). The *Cancellier* court said that a jury should be instructed to the effect that "age must 'make a difference' between termination and retention of the employee in the sense that, but for the presence of age discrimination, the employee would not have been discharged." *Id.* at 1316. The *Criswell* instructions did not elaborate upon the term except to add the word "substantial to the words 'determinative factor'." This was error. However, it was harmless in the same sense as the error in *Cancellier* was harmless:

There is no indication in the proceedings that the outcome would have changed if the *Kelly* jury instruction had been given; to the contrary, it affirmatively appears from the record that the instruction did not prejudice the defendant. This case was not decided by a hairsbreadth. There was ample evidence that consideration of age "made a difference" in the termination of Cancellier. . . . Unlike the instructions given in cases requiring

reversal which affirmatively stated an erroneous version of the law . . . or forbade the jury to consider what it properly should have considered . . . *the trial judge's instruction here was merely an unelaborated version of the correct standard.*

*Id.* (emphasis supplied) (citations omitted).

### C. *Pretext*

■ Western challenges the pretext instruction which read:

Even if you find for the defendant with respect to one or more of its defenses, plaintiffs may still prevail if plaintiffs show by a preponderance of the evidence that the reasons stated in defendant's case are merely pretexts for age discrimination. On this question, you are instructed that it is the plaintiffs' burden to persuade you that defendant's actions toward them [are] a pretext or cover-up for age discrimination; it is not defendant Western's burden to prove a contrary freedom from such illegal motivation.

The instruction is erroneous. As the case law has developed in this area, the term "pretext" has come to be used exclusively as identifying the third element of a discrimination case-in-chief attempting to prove disparate treatment. First, the plaintiff establishes the prima facie case. The burden then shifts to the defendant to show a "legitimate, nondiscriminatory reason for the employee's rejection." If the reason offered is both legitimate and nondiscriminatory, the plaintiff then must show that the stated reason is pretextual. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 & 804–05, 93 S.Ct. 1817, 1824 & 1825, 36 L.Ed.2d 668 (1973); *Douglas v. Anderson,* 656 F.2d 528, 531 (9th Cir.1981).

Only when discrimination has been established does an affirmative defense come into play. For example, when the trier of fact is satisfied that the employer has intentionally discriminated, it turns to the affirmative defense of bona fide occupational qualification to determine whether or not the employer's conduct is justified on bases acceptable under the law. In a dispa-

rate impact claim, the trier of fact turns from the plaintiff's case-in-chief showing the discriminatory effect of a neutral rule to the affirmative defense of business necessity. Pretext plays no role in the factfinder's analysis of a claimed affirmative defense. In some circumstances, the error committed here would be reversible. However, under the facts of this particular case, and reviewing against the *Kelly* standard, 640 F.2d at 985, we find the error harmless since it did not prejudice the defendant.

With regard to the downbidding claims of Captains Criswell and Starley, we must first distinguish between the disparate treatment and disparate impact theories advanced. Under the latter theory, plaintiffs alleged that even if Western had administered its rule against downbidding in a neutral fashion, such a rule would have impacted more harshly on older pilots by subjecting them to the FAA-mandated retirement rule. Since proof of motive is not required in a disparate impact claim, the shifting burdens of *McDonnell Douglas* do not appear within the plaintiffs' case. However, an analogous process does occur in the affirmative defense to disparate impact, business necessity. If the employer establishes that his business purpose is legitimate and the challenged practice directly implements it, the plaintiff may produce evidence of alternative practices that would advance the employer's purpose with a lesser impact on the protected group. *Harriss,* 649 F.2d at 677; *Blake,* 595 F.2d at 1372. Until recently the term "pretext" was also used in the case law on occasion to classify the effect of such evidence, e.g.:

If an employer does then meet the burden of proving that its tests are "job related," it remains open to the complaining party to show that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in "efficient and trustworthy workmanship." . . . Such a showing would be evidence that the employer was using its tests merely as a "pretext" for discrimination.

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975) (citations omitted).[5]

Thus at the time the challenged instruction was given, the term "pretext" had not yet acquired its current status as a legal term of art. At least with regard to the disparate impact claim, the jury would therefore have understood the pretext instruction in one of two ways. First, it can be read as allowing plaintiffs an opportunity to establish that, despite the employer's success in justifying a neutral rule, in fact no neutral rule was used, and the claim could be analyzed as one of disparate treatment. Since plaintiffs here properly advanced both disparate impact and disparate treatment theories based on the same facts, no error would arise from this interpretation.

Alternatively, since a separate instruction already clearly placed the burden of proof on plaintiffs to establish discrimination, the jury could have understood the pretext instruction as requiring it to consider plaintiffs' rebuttal of the employer's affirmative defense. In connection with the other instructions, this instruction asked the jury to consider, first, whether the employer had, by its own evidence, convinced them of its defense, and then to consider whether the plaintiffs' evidence overcame that conviction and persuaded them that the employer's acts were not justified. While, with the benefit of hindsight, we can say that it would have been better for the court to have framed this weighing of the evidence in other terms, we cannot say that the employer was prejudiced by this formulation.

With regard to the disparate treatment claims, the jury could not have understood the instruction in the first way outlined above. The alternative analysis, however, is fully applicable. Moreover, in light of the specific contentions discussed below, the error was harmless.

We turn first to the claim of disparate treatment arising from the denial of downbids. The legitimate nondiscriminatory reason asserted by Western was that downbidding was generally prohibited, with a few carefully defined exceptions which were not applicable to Captains Criswell and Starley. To show that this was a pretext, plaintiffs introduced evidence that hundreds of downbids by younger captains and first officers were permitted. Only if the jury found that the reason Western offered was pretextual would it have reached the affirmative defense of "reasonable factors other than age." And the "reasonable factor" would be the provisions of the Pilot Agreement, and the System Board determination that the parties to the agreement had not intended to allow downbidding in the circumstances presented by Criswell and Starley. Since the same contentions, when offered as a legitimate nondiscriminatory reason, would have been rejected as pretextual in the case-in-chief, it is inconceivable that the jury would have accepted the same information when offered as an affirmative defense. Had plaintiffs' pretext evidence, instead of showing that Western ignored limitations on exceptions when younger pilots were involved, gone to statements made specifically to them regarding the reasons for the denials, it might have been possible for a jury to find pretext within the plaintiffs' case-in-chief and at the same time to accept the employer's affirmative defense of reasonable factors other than age. Under the circumstances of this case, however, the error was harmless.

---

5. Recently, in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), the Supreme Court has clearly stated that it views the elements of the two causes of action, discriminatory impact and discriminatory treatment, as being distinctly different:

   In *McDonnell Douglas v. Green,* 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment.[5]
   Footnote 5 reads:
   We have recognized that the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes.

Finally, we turn to the disparate treatment claim asserted by all three plaintiffs, the required retirement of second officers at age sixty. The legitimate, nondiscriminatory reason asserted for their retirement was that of safety. In essence, Western argued that since captains and first officers are required to retire at age sixty by the FAA, and second officers are an integral part of that "pilot organism," the airline holds all of the members of the flight deck crew to the same high level of health and, to protect public safety, retires them together. To demonstrate that this was a pretext, the plaintiffs introduced evidence showing that Western permits captains and first officers under the age of sixty who cannot meet the requirements of the physical exam for their positions to downbid and instead meet the less demanding physical requirements for the position of second officer. Western has permitted a captain of fifty-six to do this in order to continue flying. Therefore, before the jury reached the affirmative defense of bona fide occupational qualification, it would have had to accept this evidence of pretext. When it turned to the BFOQ defense, it would find that Western was arguing that a blanket retirement was "reasonably necessary" at age sixty since it was impossible to ascertain on an individual basis who could perform safely beyond that age and who could not. To find for Western on this defense, the jury would have had to accept the same argument which it had just rejected as pretextual in order to reach the defense at all. Therefore, once again the pretext instruction is harmless.

## IV. Relief Granted

### A. Attorneys' Fees

The district court applied the twelve-factor test for determining reasonable attorneys' fees set out in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–19 (5th Cir.1974), and adopted by this circuit in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Western focuses its objections on the award of fees in an amount greater than that contracted for by plaintiffs. However, the statute authorizes payment of a reasonable fee, not the fee agreed upon by the parties and their attorneys. The fee agreed upon is therefore not decisive. *See Sargeant v. Sharp,* 579 F.2d 645, 647–49 (1st Cir.1978) ("[A] fee agreement is irrelevant to the issue of entitlement and should not enter into the determination of the amount of a reasonable fee." *Id.* at 649); *Clark v. American Marine Corp.,* 320 F.Supp. 709, 709–11 (E.D.La.1970), *aff'd,* 437 F.2d 959 (5th Cir.1971); *Blowers v. Lawyers Cooperative Publishing,* 28 Empl.Prac.Dec. (CCH) ¶ 32,595 at 24,673–74 (W.D.N.Y.1982).

The other objections to the award which Western raises here were considered carefully by the district court which made findings on the record. Abuse of discretion is the applicable standard, *Kerr,* 526 F.2d at 69; there was none here. We affirm the award of $313,309 to plaintiffs' attorneys.

Joan Celia Lavine, who acted as local counsel for one of the plaintiffs for a short period at the beginning of this litigation, has appealed the district court's award to her of $1,555 in attorney's fees. She contends that it is inadequate. Of the $31,012.50 which Lavine claims as the appropriate amount, over $10,000 was billed as preparation of the petition for fees. Her contentions are without merit. We therefore affirm both the district court's generous award of fees and its denial of costs to her.

### B. Prejudgment Interest

The ADEA authorizes courts "to grant such legal or equitable relief as may be appropriate to effectuate the purposes" of the act. 29 U.S.C. § 626(b). In *Kelly v. American Standard,* 640 F.2d 974 (9th Cir. 1981), this court recognized that liquidated damages and prejudgment interest serve different functions in making ADEA plaintiffs whole. Liquidated damages are "a substitution for punitive damages and [are] intended to deter intentional violations of the ADEA." *Id.* at 979. Prejudgment interest is intended to compensate "the loss of use of this money during the period pay-

ments [are] withheld from [ADEA plaintiffs]." *Id.* at 982. The *Criswell* court recognized this difference in ordering relief. It awarded prejudgment interest only on the portion of damages representing the plaintiffs' actual loss. 514 F.Supp. at 396. *Cf. Kelly,* 640 F.2d at 982 (interest awarded only on plaintiff's pecuniary loss, not on damages awarded for emotional distress). We therefore hold that the district court properly exercised its equitable powers by awarding the plaintiffs prejudgment interest on their back pay awards.

### C. *The Permanent Injunction*

#### 1. ALPA's Status in *Criswell*

█ In its answer and again after the jury verdict against it, Western raised the issue of whether ALPA was an indispensable party. On appeal, Western contends only that ALPA was a "necessary party" under Fed.R.Civ.P. 19(a)(1) & (2), an argument which does not seem to have been directly made to the trial court, recognizing that a necessary party may be treated as an indispensable party under certain circumstances. *See Eldredge v. Carpenters 46, etc.,* 662 F.2d 534, 537 (9th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 231, 74 L.Ed.2d 183 (1982). Western argues, in effect, for the Rule 19(b) appellate remedy: that the injunction against it should be vacated for absence of an "indispensable party." It contends that ALPA is indispensable because if Western is to conform to the court's order, its actions will cause it to breach its collective bargaining agreement with the union.

We reject the argument that the injunction should be vacated because of ALPA's absence. First, it is doubtful that ALPA is a necessary party under Rule 19(a) analysis. *See, e.g., Eldredge v. Carpenters 46, etc.,* 662 F.2d at 537–38. As the trial court stated, "This is an action against Western as an 'employer' under ADEA § 4(a) (§ 623(a)) and no relief has been sought against or rendered affecting ALPA as a 'labor organization.' ADEA, § 4(c), (623(c))." 514 F.Supp. at 396.

However, even if ALPA were a "necessary party," that only triggers the second step of the analysis:

> [I]f parties determined to be necessary under rule 19(a) cannot be joined, should the action in "equity and good conscience" be dismissed? Only if the court determines that the action should be dismissed is the absent party labelled "indispensable."

*Eldredge,* 662 F.2d at 537. Here, Western concedes that feasibility of joinder was not a problem, as indeed it illustrated in *Stone v. Western Airlines* when it brought ALPA into the action via a third-party complaint.

Moreover, Western makes no argument that ALPA was indeed indispensable, and when we look to the policies underlying denomination of parties as such, we find that ALPA simply does not qualify.

> Rule 19 is intended to protect the absentee from prejudice, to protect those made parties from harassment by successive suits, and to protect the courts from being imposed upon by multiple litigation.

C. Wright & A. Miller, *Federal Practice & Procedure* § 1609 at 92. First, ALPA is not prejudiced here; the organization apparently reached that conclusion itself when Western contacted it at the request of the court to inform it of the action and to inquire whether it wished to intervene. ALPA chose not to. Second, parties wishing to protect themselves from harassment, which is the gravamen of Western's complaint here, "must act for themselves." *Id.* Here Western did not seek to bring ALPA into the action itself, as it could have done, nor did it ask the court to order ALPA joined. In this regard it is important to remember that the rule contemplates a situation where a necessary party cannot be joined; that is not the situation here. Finally, the third criterion, avoidance of multiple litigation, has no application here since reversal "requires a second [hearing] while affirmance would end the matter." *Id.* at 93; *cf. Kaiser v. Local 83,* 577 F.2d 642 (9th Cir. 1978) (neither employer nor union is indispensable party in action against the other by employee-union member when action against employer is based on violation of

terms of collective bargaining agreement and action against union is based on violation of duty of fair representation).

### 2. Systemwide Relief

■] Defendants contend that because this suit was not a class action filed pursuant to 29 U.S.C. § 216(b),[6] the permanent injunction which grants "class-wide" relief should be vacated on the ground that the court lacked jurisdiction to grant it. Western argues that relief instead should be limited to the individual plaintiffs.

This contention ignores the fact that to the extent that 29 U.S.C. § 216(b) is relevant, it controls only monetary awards. Injunctive relief has been granted here, a remedy approved by a number of courts in employment discrimination cases, despite the absence of a class certified under Rule 23 of the Federal Rules. As the Seventh Circuit has observed, the evil to be eliminated is discrimination on the basis of class-wide characteristics, and for this reason the interests of other members of the class are vindicated by the actual plaintiffs. *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 719–20 (7th Cir.1969). In light of the special responsibility of the federal courts to effectuate the policies of the act, it is necessary to devise remedies which implement the act's policy as well as providing individual relief. *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1201 (7th Cir.1971), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1972).

The *Bowe* and *Sprogis* courts were dealing with Title VII. But since the remedial purpose of the two acts is the same ("elimination of discrimination from the workplace," *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978)), and because the injunctive powers under both statutes are similar in breadth (*compare* 29 U.S.C. § 626(b) *with* 42 U.S.C. § 2000e–5(g)), we hold that the same standards for class-wide relief should be applied in ADEA cases as are applicable under Title VII. *Accord, Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730 (5th Cir.1977) (company-wide injunction appropriate where facts establish the existence of a policy which violates the ADEA). In this case, Western's actions regarding the plaintiffs were taken pursuant to a class-wide, age-based policy equally applicable to all flight deck crewmembers. The remedy must be co-extensive with the right. Once the district court had determined that the policy violated the ADEA, and here it found "clear and willful violations," system-wide injunctive relief was properly granted.

### V. The *Stone* Appeal

Western concedes that its appeal of the reinstatement of Second Officer White in *Stone* is conditioned upon the outcome of its appeal in *Criswell*. Since we have affirmed both the equitable relief and the jury verdict of *Criswell*, we decline to vacate White's reinstatement.

Western appeals as well the denial of the injunctive relief which it sought against ALPA which would have allowed the airline to administer additional medical tests on the court-reinstated pilots over the age of sixty. ALPA opposed the motion on the grounds that such examinations would violate the collective bargaining agreement. The district court denied the motion, stating that it was best deferred until such time as a record had been developed. We affirm that decision. Western seems to believe that the plaintiffs are required to prove that one or more methods of available medical testing are adequate to replace its age sixty rule. However, we are dealing here with the discriminatory treatment charge which was the central complaint of *Criswell*: the assertion that Western Airlines discriminated in violation of the ADEA when it refused to allow *second officers* to fly beyond the age of sixty. Western's response to that count of the complaint was the affirmative defense of bona fide occupational qualification wherein the full burden falls upon the defendant to prove that

---

**6.** Incorporated by reference into the ADEA, 29 U.S.C. § 626(b); *Naton v. California*, 649 F.2d 691, 697 (9th Cir.1981).

age is the only criterion that will assure safe and efficient job performance. The district court held squarely in *Criswell* that Western had failed to carry its burden in that aspect of the case, and we have affirmed that ruling. The ruling in *Stone,* far from demonstrating "the bankruptcy of the *Criswell* 'record,'" in the entirely un-called-for language of the defendant, actually implements it quite accurately. Western previously failed to show that it could not conduct such examinations. That is all that was clearly established. If Western now feels that it must conduct examinations, it will be necessary for it to develop a record below demonstrating that the relief is warranted.[7] To grant an injunction at this point would be to do so on the mere assertion of necessity by a party. Equitable powers cannot be exercised at such behest.

In summary, we find that the trial court accorded the proper degree of deference to the System Board decision, and correctly interpreted the law of the circuit in its denial of the motion for judgment notwithstanding the verdict. Of the challenges to the jury instructions, we find that the instructions were either correctly given or that the errors made were harmless. As for the relief issues, we affirm the awards of attorneys' fees and prejudgment interest, find that ALPA was not an indispensable party to the *Criswell* injunctive order and affirm that order for systemwide relief. Finally, we affirm the pretrial orders entered in *Stone.*

The district court is AFFIRMED.

---

7. In this regard we note that more than 200 second officers over the age of sixty are now flying for major airlines in the United States. We note as well that defendant's expert conceded at the *Criswell* trial that the FAA-mandated examination system with which all West-ern second officers must comply is safe. We note finally that under the Pilot Agreement Western already performs additional medical and computer simulator evaluations which all second officers must pass whatever their age.