Monty CRANSTON, Plaintiff-Appellee,

v.

William CLARK, Secretary of the
Department of Interior,
Defendant,

and

O.W. Morgan, Defendant-Appellant.

No. 84–4199.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1985.

Decided Aug. 6, 1985.

Gregory Munro, Herndon, Harper & Munro, Billings, Mont., for plaintiff-appellee.

Laura L. Payne, Poulson, Odell & Peterson, Denver, Colo., for defendant-appellant.

Before HUG, FARRIS and BOOCHEVER, Circuit Judges.

By contrast, the Union here simply seeks access to management's own general standards of assessment.

**HUG, Circuit Judge:**

Defendant-appellant O.W. Morgan ("Morgan") appeals the district court's order granting summary judgment against him that rejected his application for a noncompetitive oil and gas lease as a multiple filing in violation of the regulations governing the noncompetitive oil and gas simultaneous filing system. We reverse.

## FACTS

Morgan and plaintiff-appellee Monty Cranston ("Cranston") each filed individual applications for a noncompetitive oil and gas lease on parcel MT 69. Morgan's application was executed and filed on his behalf by Federal Research Corporation ("FRC"), a Florida based filing service. By letter apparently directed to the Secretary of the Interior (the "Secretary") and dated October 2, 1981, FRC authorized R.J. Ciampa and N.C. Ciampa to sign on behalf of FRC as agent for Morgan. At a September 1981 simultaneous oil and gas lease drawing, Morgan's application was drawn with first priority and Cranston's application was drawn with second priority. Among other applicants for lease parcel MT 69 was Nancy Ciampa. Subsequently, it was determined that Nancy Ciampa and N.C. Ciampa are the same person. Nancy Ciampa's individual application was not drawn.

Shortly after the drawing, Cranston protested Morgan's selection, claiming that there were several irregularities in Morgan's lease application and that Morgan was not qualified to hold the oil and gas lease. The Bureau of Land Management ("BLM") considered and rejected Cranston's allegations. Cranston appealed the BLM's decision to the Interior Board of Land Appeals ("IBLA"). The IBLA affirmed the BLM's rejection of Cranston's protest, *Monty Cranston*, 67 IBLA 364 (1982), and refused to consider Cranston's contention that the multiple filing rules had been violated by Morgan. On reconsideration, the IBLA ruled that there was no multiple filing because there was no agency relationship between Morgan and Ciampa out of which an interest could arise.

Cranston filed a complaint seeking judicial review of the IBLA's decision. On cross motions for summary judgment, the district court reversed the IBLA, holding that Morgan had an interest in the application of N.C. Ciampa at the time of the simultaneous filing. The district court ordered the Secretary to reject Morgan's simultaneous oil and gas lease application as a prohibited multiple filing.

## STANDARD OF REVIEW

In reviewing the propriety of a grant of summary judgment, our task is identical to that of the trial court. *Ward By & Through Ward v. United States Department of Labor*, 726 F.2d 516, 517 (9th Cir.1984). That is, we must view the evidence and inferences *de novo*, in the light most favorable to the non-moving party, in this instance, Morgan, to determine whether the trial court correctly found that there was no genuine issue of material fact and that the moving party, herein Cranston, was entitled to judgment as a matter of law. *Id.*

The district court and this court can reverse an agency decision only if that agency action is found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E) (1982); *Walker v. Navajo-Hopi Indian Relocation Commission*, 728 F.2d 1276, 1278 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984). Traditionally, an agency's interpretation of its own regulation is entitled to a high degree of deference. *Sierra Club v. Clark*, 756 F.2d 686, 690 (9th Cir.1985); *Hawaiian Electric Co. v. EPA*, 723 F.2d 1440, 1447 (9th Cir.1984).

"Substantial evidence" means "more than a mere scintilla." It means such relevant evidence as "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59

S.Ct. 206, 217, 83 L.Ed. 126 (1938)). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Id.* at 401, 91 S.Ct. at 1427. Although the standard of review under the substantial evidence test is relatively deferential to the agency fact finder, the judicial review undertaken by the court must be searching and careful, subjecting the agency's decision to close judicial scrutiny. *Memorial, Inc. v. Harris,* 655 F.2d 905, 912 (9th Cir. 1980).

Under the "arbitrary and capricious" standard, the reviewing court is limited to deciding whether there has been a clear error of judgment by the agency and whether the agency action was based upon a consideration of relevant factors. *Nance v. Environmental Protection Agency,* 645 F.2d 701, 705 (9th Cir.), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). The scope of review under the arbitrary and capricious standard is limited, and a court may not substitute its judgment for that of the agency. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Chism v. Nat'l Heritage Life Insurance Co.,* 637 F.2d 1328, 1331 (9th Cir. 1981).

## DISCUSSION

The Mineral Lands Leasing Act (the "Act") authorizes the Secretary to lease wildcat oil and gas lands on a noncompetitive basis. 30 U.S.C. § 226(a), (c) (1982). The Act expressly entitles the first qualified applicant to a lease.[1] In order to determine which applicant is first, the Secretary operates a simultaneous filing program. Under the program, a list of available lands is posted monthly. 43 C.F.R. § 3112.1–2 (1981). Those who submit an application during the short filing period are considered to have filed simultaneously. 43 C.F.R. § 3112.2–1 (1981).[2] A drawing is held, three applications are drawn at random, and the lease is issued to the first-drawn applicant, provided that the successful applicant is qualified under BLM regulations. 43 C.F.R. §§ 3112.3–1 and 3112.-6–1 (1981). If, after the issuance of a lease to one of the drawees, the Secretary determines that the lease was improperly issued because of defects in the application of the drawee chosen, the lease must be cancelled. 30 U.S.C. § 184(h)(1) (1981); 43 C.F.R. § 3112.6–3 (1981).

Two critical features of the noncompetitive oil and gas simultaneous filing process are the sole party in interest and multiple filing regulations. The sole party in interest regulation, 43 C.F.R. § 3102.2–7 (1981), requires the applicant to disclose in a signed writing the identity of all other persons or entities holding an interest in the lease to be drawn, and the nature of the interest held. If the interest is contained in a written agreement, a copy of that document must be submitted to the BLM.[3]

---

1. Section 226(c) states:
 If the lands to be leased are not [within any known geological structure of a producing oil or gas field], the person first making application for the lease who is qualified to hold a lease under this chapter shall be entitled to a lease of such lands without competitive bidding.

2. The application must be submitted on an approved form, commonly referred to as a "simultaneous oil and gas drawing card" or "DEC." 43 C.F.R. § 3112.2–1 (1981).

3. Section 3102.2–7 provides as follows:
 (a) The applicant shall set forth on the lease offer, or lease application if leasing is in accordance with Subpart 3112 of this title, or on a separate accompanying sheet, the names of all other parties who own or hold any interest in the application, offer or lease, if issued.
 (b) A statement, signed by both the offeror or applicant and the other parties in interest, setting forth the nature of any oral understanding between them, and a copy of any written agreement shall be filed with the proper Bureau of Land Management office not later than 15 days after the filing of the offer, or application if leasing is in accordance with Subpart 3112 of this title. Such statement or agreement shall be accompanied by statements, signed by the other parties in interest, setting forth their citizenship and their compliance with the acreage limitations of §§ 3101.1–5 and 3101.2–4 of this title.

The multiple filing regulation, 43 C.F.R. § 3112.6–1(c) (1981), prohibits "[a]ny agreement, scheme, plan or arrangement ... [giving] any party ... more than a single opportunity of successfully obtaining a lease or interest" in the offered parcel.[4] Specifically proscribed is an agreement between any person or entity "in the business of providing assistance to participants in a Federal oil and gas lease program" and its assignee whereby the person or entity could effect an assignment of the lease. 43 C.F.R. § 3112.6–1(c)(2). In addition, "[n]o person or entity shall hold, own or control any interest in more than one application for a particular parcel." 43 C.F.R. § 3112.- 2–1(f) (1981).

The terms "sole party in interest" and "interest" are defined by 43 C.F.R. § 3100.- 0–5(b) (1981), as follows:

"Sole party in interest" means a party who is and will be vested with all legal and equitable rights under the lease. No one is, or shall be deemed to be, a sole party in interest with respect to an application, offer or lease in which any other party has any of the interests described in this section. The requirements of disclosure in any application or offer of an applicant's or other parties' interest in a lease, if issued, reflect the policy that all applicants and other parties having an interest in simultaneously filed lease applications or offers to lease shall have an equal opportunity for success in the drawings to determine priorities. Additionally, such disclosures provide the means of maintaining adequate records of acreage holding. An "interest" in the lease includes, but is not limited to, record title interests, overriding royalty interests, working interests, operating rights or options or any agreements covering such "interests." *Any claim or any prospective or future claim to an advantage or benefit from a lease, and*

*any participation or any defined or undefined share in any increments, issues or profits which may be derived from or which may accrue in any manner from the lease based upon or pursuant to any agreement or understanding existing at the time when the application or offer is filed, is deemed to constitute an "interest" in such lease.*

(Emphasis added.)

 The district judge disagreed with the express finding of the IBLA and held that Morgan's application should have been rejected as a multiple filing because he concluded that Ciampa was Morgan's agent and, as such, owed fiduciary duties to him. The district court reasoned that Ciampa's competing application violated her fiduciary duty to Morgan, thereby giving rise to an equitable action in favor of Morgan to impose a constructive trust on any properties acquired by Ciampa as a result of this breach. By reason of the constructive trust, the district court continued, Morgan had an interest in Ciampa's application and, therefore, had more than a single opportunity for success in the drawing for parcel MT 69, in violation of the regulatory prohibition against multiple filings.

We disagree with the district court because it failed to afford the IBLA decision the high level of deference that is usually accorded such decisions. In its December 29, 1982 order on reconsideration, the IBLA rejected the argument urged by Cranston and eventually adopted by the district court.

[U]nder the circumstances of this case neither Ms. Ciampa nor FRC has an interest in Morgan's application as interest is defined in 43 C.F.R. § 3100.0–5, nor does Morgan in Ciampa's. Question (f) on the application applies to the applicant, Morgan, not the signatory of the

---

**4.** Section 3112.6–1 provides in pertinent part as follows:

(c) *Prohibited agreements, schemes, plans or arrangements.* Any agreement, scheme, plan or arrangement entered into prior to selection, which gives any party or parties more than a single opportunity of successfully obtaining a lease or interest therein is prohibited and any application made in accordance with such agreement, scheme, plan or arrangement shall be rejected.
(Emphasis in original.)

company that filed on his behalf. And Morgan would not acquire an interest in Ciampa's application, should it be drawn with first priority, on principles of constructive trust, since FRC is his agent, not Ciampa, and Ciampa would not be obligated to assign her lease to FRC if she were successful.[5]

The IBLA's interpretation and application of the simultaneous oil and gas lease filing regulations is fair and reasonable and should be accorded great weight. Even if the agency's interpretation is not the only one permitted by the language of the regulation, where it is a reasonable interpretation, courts must respect it. *Horizon Mutual Savings Bank v. Federal Savings & Loan Ins. Corp.*, 674 F.2d 1312, 1316 (9th Cir.1982).

As defined in 43 C.F.R. § 3100.0–5, an "interest" in a lease or application for a lease must be "based upon or pursuant to any *agreement* or *understanding* existing at the time when the application or offer is filed...." (Emphasis added.) Here, there is no evidence of any agreement, oral or written, between Morgan and Ciampa entitling either party to benefit from the lease application of the other. The policy of requiring the disclosure of interests and prohibiting multiple interest is to ensure that no applicant has an unfair advantage or opportunity for successfully obtaining a lease. That policy has not been violated by Morgan.

Moreover, there was absolutely no evidence that FRC and Ciampa had any agreement requiring Ciampa to assign any lease obtained in the drawing to FRC. Such an agreement would have been in violation of 43 C.F.R. § 3112.6–1(c)(2). FRC, not Ciampa, was Morgan's agent for purposes of filing an application for simultaneous oil and gas lease drawings conducted by the Secretary. FRC had similar responsibilities for almost one hundred other applicants for the parcel in issue. No one can reasonably contend that all those FRC-filed applications should be rejected as a multiple filing because of Ciampa's filing.

The district court's holding is also faulty because applying the equitable principle of a constructive trust to this particular situation works an injustice on the innocent applicant for whom the equitable remedy is being imposed. In the instant action, the consequences of imposing a constructive trust on Ciampa is the disqualification of Morgan, the purported beneficiary of the constructive trust. The application of an equitable remedy producing such an anomalous result is untenable. This flawed analysis becomes illogical if its reasoning is extended to the reverse situation. Assuming Ciampa's individual application was selected with first priority, under the district court's holding, Morgan should have a right to a constructive trust of the benefits of Ciampa's application. However, Ciampa's application, according to the district court's theory, would violate the regulations and would be rejected. Ciampa could not acquire any oil or gas lease in competition with Morgan, she would not be unjustly enriched, and Morgan would have no recourse in the form of a constructive trust against her. Moreover, Morgan could never benefit from a constructive trust applied to Ciampa's application. He would have one application as beneficiary of Ciampa and another in his own name, and would be barred from being assigned Ciampa's lease by the multiple application prohibition.

The district court committed clear error in reversing the IBLA's decision that no agency relationship existed. We reverse and remand for proceedings consistent with this decision.

REVERSED and REMANDED.

---

5. Question (f) of the application asks "Does the undersigned have any interest in any other application filed for the same parcel as this application?" Morgan's response was no.