**MONSANTO COMPANY, et al., Plaintiffs-Appellants,**

v.

**Donald P. HODEL, Secretary of the Interior, et al., Defendants-Appellees.**

No. 86–3509.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1987.

Decided Sept. 3, 1987.

William C. Carr, Idaho Falls, Idaho, for plaintiffs-appellants.

Robert L. Klarquist, Washington, D.C., for defendants-appellees.

Before WALLACE, FLETCHER and BRUNETTI, Circuit Judges.

PER CURIAM:

Appellants, Monsanto Company, J.R. Simplot Company, and Stauffer Chemical Company, lessees of federal mineral lands, challenge the Secretary of the Interior's decision to assess retroactively additional royalties based on an increased value for phosphate ore. The district court upheld the Secretary's action and awarded prejudgment interest to the Government. We affirm.

## FACTS

Appellants are lessees of federal mineral leases issued pursuant to the Mineral Leasing Act of 1920, 30 U.S.C. § 212 (the Act). The Act mandates that the Secretary of Interior collect a royalty of not less than five percent of the gross value of phosphate removed from leased deposits. Appellants' leases require a royalty of five percent of gross value, set a minimum royalty of twenty-five cents per ton and give the Secretary of the Interior the right to set the value of phosphate ore.

In 1974, the Department of Interior initiated an audit to determine "gross value" of phosphate. The Office of Audit and Investigation (OAI) requested information from appellants concerning production, costs, and sales of phosphate produced from the leased areas. OAI explained to the lessees that the purpose of the audit was to set the value of phosphate in order to determine royalties under their phosphate leases. The audit, completed in April of 1975, established that the gross value was well above ten dollars per ton. As lessees had been paying the minimum royalty of only twenty-five cents per ton, a conclusion of the audit was that the Government was not following its statutory mandate to collect not less than five percent of gross value. In August of 1975, the United States Geological Survey (USGS) sent a notice to Stauffer stating that royalty payments for July of 1975 and the following months would be considered estimates and retroactively adjusted as soon as the Bureau of Mines decided on a formula for the valuation of the phosphate. The Deputy Assistant Secretary prepared an "option paper" that suggested to the Secretary two formulas that alternatively could be used to compute gross value of phosphate. The Secretary, rather than deciding based on the option paper, met with industry representatives in December of 1975 and expressed his desire to have complete financial and production information from the industry. Based in part on information furnished by the industry, a new option paper was prepared suggesting several methods of valuation to the Secretary. The Secretary made his final determination of value on May 13, 1976 based on 1975 costs and price data.

On May 17, 1976, a USGS Area Mining Supervisor directed Stauffer to use the new formula in its royalty calculations beginning June 1, 1976. Soon thereafter, however, the Chief of the Conservation Division sent the Area Mining Supervisors guidelines on how to implement the Secretary's decision. These guidelines provided that the new value would be applied to all production after January 1, 1975. The USGS Area Mining Supervisor informed Stauffer in late June of the earlier implementation date. Appellants challenge the application of the new formula from January 1, 1975 to June 1, 1976, an eighteen month period.

The Directors of the United States Geological Survey and the Interior Board of Land Appeals both upheld the orders of the Secretary against appellants' challenges. The district court granted summary judgment to the Government including prejudgment interest.

## DISCUSSION

Although we review *de novo* the district court's entry of summary judgment, *Sagebrush Rebellion, Inc. v. Hodel*, 790 F.2d 760, 763 (9th Cir.1986), we may set aside the Secretary's determination only if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.*

### I. *Retroactive Application of Increased Royalties*

■ 30 U.S.C. section 212 provides that all leases permitting phosphate mining "shall be conditioned upon the payment to the United States of such royalties as may be specified in the lease, which shall be fixed by the Secretary of the Interior ... at not less than 5 per centum of the gross value of the output of phosphates or phosphate rock...." Since the statute mandates that the Secretary collect royalties of not less than five percent of the value of phosphate and the leases permit the Secretary to set the value of phosphate, we find that the collection of increased royalties from January 1975 is entirely proper. From as early as 1974, when the audit was conducted, appellants had notice that the Secretary might readjust the royalties based on a determination of the value of phosphate. Had the Secretary sought to increase royalties based on a change in the percentage of the value of phosphate ore from the January 1975 date, we would agree with appellants' retroactivity claim and indeed could find a conflict with the lease terms. However, we have here neither a change in the lease terms nor any

fundamentally unfair application of the statute or the lease terms to these appellants. Accordingly, we will not disturb the Secretary's actions.

Appellants urge that *Continental Oil Co. v. United States*, 184 F.2d 802 (9th Cir.1950), precludes collection of the increased royalties retroactively from January 1, 1975. We disagree. In contrast to the record in *Continental*, the record in this case is clear that had the Secretary not collected the increased amounts from January 1, 1975 he would have been in violation of the statutory mandate to collect royalties of not less than five percent of gross value. The audit was undertaken in 1974. It is to the Secretary's credit that he undertook a thorough study and allowed comment and input from the industry after completion of the audit before implementing any change. The gross value as determined by the Secretary established the value as of 1975 and made evident the gross inadequacy of prior royalty payments. Delay in final determination to assure fairness and accuracy cannot defeat the statutory obligation to charge royalties, based on actual value when determined, for the period under scrutiny. *Continental* does not support a contrary holding.

Appellants also argue that the decision to calculate royalties from the January 1, 1975 date was invalid because a lower level official and not the Secretary made the decision. The Interior Board of Land Appeals found that the Secretary made the decision. There is substantial evidence in the record to support the Board's finding. Accordingly, we will not set aside its finding. *See Cranston v. Clark*, 767 F.2d 1319, 1320 (9th Cir.1985).

## II. *Prejudgment Interest*

Appellants argue that the district court erred in awarding the Government prejudgment interest on the unpaid royalties. The award of prejudgment interest is a matter left to the discretion of the trial court. *Shaw v. International Ass'n of Machinists and Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir.), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985) *United States v.*

*California Board of Equalization*, 650 F.2d 1127, 1132 (9th Cir.1981), *aff'd*, 456 U.S. 901, 102 S.Ct. 2261, 72 L.Ed.2d 864 (1982).

The effect of a refusal to grant prejudgment interest in this case would be to allow an interest free loan to appellants on funds belonging to the Government that it was statutorily mandated to collect. Disallowance of interest would encourage delay in payment. Appellants contend nonetheless that the award was improper because the Government delayed in bringing suit. The trial court, however, found that the delays that plagued the litigation of this case were the fault of both parties. We find no abuse of discretion.

AFFIRMED.