Kathy **MURPHY**, an individual, Plaintiff,

v.

**CITY OF ELKO**, a municipal corporation, Roger Songer, individually and in his official capacity as Chief of the Elko Police Department, Kristine Kalmer, individually and in her official capacity as an officer with the Elko Police Department, Lorry S. Lipparelli, individually and in his official capacity as Manager of the City of Elko, and William Bower, individually and in his official capacity as Captain with the Elko Police Department, Defendants.

No. CV–N–95–395–ECR.

United States District Court, D. Nevada.

Oct. 6, 1997.

Jeffrey A. Dickerson, Reno, NV, for Sharon Lindley.

J. Andre' Boles, Jeffrey A. Dickerson, Reno, NV, for Ranae Goff.

Peter Wetherall, Reno, NV, for Janel Beck.

Fred Atcheson, Reno, NV, for Kathy Murphy.

Thomas P. Beko, Erickson, Thorpe & Swainston, Ltd., Reno, NV, for City of Elko and all defendants.

*ORDER*

REED, District Judge.

Plaintiff Kathy Murphy has filed a proposed judgment (# 101), based upon the verdict rendered in her jury trial. Defendants object (# 103, # 104) to portions of the proposed judgment, and Plaintiff has not replied. We **OVERRULE IN PART** Defendants' objections and enter judgment, as outlined below.

On August 7, 1997, the jury reached a verdict (# 99) to the following effect: 1) in favor of Plaintiff and against Defendant Songer on Plaintiff's 42 U.S.C. § 1983 claim, for $63,000 in loss of earnings and $25,000 in mental and emotional pain and suffering, 2) against Plaintiff and in favor of all Defendants on Plaintiff's Title VII claim, and 3) in favor of Plaintiff and against Defendant Kalmer on Plaintiff's intentional infliction of emotional distress claim, for $50,000. In addition, the jury determined by interrogatory that punitive damages should be awarded against Defendants Songer and Kalmer and that Ms. Kalmer had not acted within the course and scope of her employment. The parties stipulated during deliberations to the punitive damages to be awarded (in the event the jury determined punitive damages were appropriate), thus obviating any punitives-phase trial. Stipulation (# 98A).

Plaintiff has now filed her proposed form of judgment (# 101), with accompanying points and authorities. Because this proposed judgment raises several unadjudicated issues, Defendants have opposed (# 103, # 104); Plaintiff has not replied. The issues, which we consider one by one below, are as follows:

1. Whether Plaintiff is entitled to prejudgment interest on her Section 1983 award, and, if so,

   a. Whether interest should be calculated on the entire damages award or only on the award for "loss of earnings";

   b. Whether the interest should be calculated from the date of service of summons or from the date of the jury verdict; and

   c. Whether the Court should employ the Nevada interest rate (prime rate + 2%) or the federal rate (52–week Treasury bill rate).

2. Whether the contents of the punitive damages settlement should be listed on the final judgment.

3. Whether Plaintiff is entitled to front pay.

4. Whether Plaintiff is entitled to back pay.

Defendants do not contest the other issues raised by Plaintiff.[1]

## I. Prejudgment Interest

### A. The Law

Oddly, given the veritable deluge of civil rights cases in the federal courts, the Ninth Circuit has never unequivocally articulated the proper standard for awarding prejudgment interest in Section 1983 cases. *See Golden State Transit v. City of Los Angeles,* 773 F.Supp. 204, 210 (C.D.Cal.1991) (noting the Ninth Circuit's silence on the issue). For other federal causes of action, the Ninth Circuit has generally held that prejudgment interest is a matter committed to the sound discretion of the trial court. *In re Acequia, Inc.,* 34 F.3d 800, 818 (9th Cir.1994) (bankruptcy adversary proceeding to set aside fraudulent conveyance); *U.S. v. Pend Oreille P.U.D. No. 1,* 28 F.3d 1544, 1553 (9th Cir. 1994), *cert. denied,* 514 U.S. 1015, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995) (Federal Power Act); *Home Savings Bank. F.S.B. v. Gillam,* 952 F.2d 1152, 1161 (9th Cir.1991) (Federal Deposit Insurance Act); *Monsanto Co. v. Hodel,* 827 F.2d 483, 485 (9th Cir.1987) (Min-

---

**1.** In particular, Defendants do not contest Plaintiff's request for prejudgment interest on her emotional distress claim in the sum of $9,290.75. Assuming that this was the accumulated interest as of the date of the jury verdict, the additional interest as of October 6, 1997 is 60 days/365 days × 10.5% × $59,290.75 = $863.01. Consequently, the total judgment on this claim will be $60,153.76.

eral Leasing Act); *Shaw v. Int'l Ass'n of M. & A. W. Pension Plan,* 750 F.2d 1458, 1465 (9th Cir.), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985) (ERISA); *Satterwhite v. Smith,* 744 F.2d 1380, 1381 (9th Cir.1984) (42 U.S.C. § 1981); *Western Pacific Fisheries, Inc. v. S.S. President Grant,* 730 F.2d 1280, 1288 (9th Cir.1984) (admiralty); *Criswell v. Western Airlines, Inc.,* 709 F.2d 544, 556–57 (9th Cir.1983), *aff'd,* 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) (Age Discrimination in Employment Act). Where this general principle of discretion is "trumped by the command of a federal statute," however, the Court has barred the award of prejudgment interest. *Purcell v. U.S.,* 1 F.3d 932, 942–43 (9th Cir.1993) (income tax refund action); *Wildman v. Burlington Northern Railroad Co.,* 825 F.2d 1392, 1396 (9th Cir.1987) (Federal Employers' Liability Act). No such command exists in Section 1983, though. On the other hand, in some contexts prejudgment interest should be awarded as a matter of course. *Frank Music Corp. v. Metro-Goldwyn–Mayer Inc.,* 886 F.2d 1545, 1551–52 (9th Cir.1989), *cert. denied,* 494 U.S. 1017, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990) (copyright); *Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986) (Fair Labor Standards Act). Section 1983 is not one of these contexts.

As a result, no Ninth Circuit case is truly on point and we must look to other courts for more specific guidance on how to exercise our discretion. Several District Courts within the Ninth Circuit have considered prejudgment interest under Section 1983. In *Herrington v. County of Sonoma,* 790 F.Supp. 909, 924 (N.D.Cal.1991), *aff'd,* 12 F.3d 901 (9th Cir.1993), ten years had passed since the injury complained of, and five years had passed since the jury had returned its verdict. The court applied the principle announced in *Wessel v. Buhler,* 437 F.2d 279, 284 (9th Cir.1971): "Whether interest will be awarded is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." After balancing the equities, the court found that interest was appropriate, starting from the date of the injury. *Herrington,* 790 F.Supp. at 924.

In *Golden State Transit,* 773 F.Supp. at 219–20, service of summons occurred in 1981, ten years prior, and the Supreme Court had twice heard appeals in the case. Applying the same standard from *Wessel,* and particularly emphasizing the "relative equities," the court found that interest was appropriate, starting from the date of service of summons—that is, the date the defendant was first on notice that its conduct might be unlawful. *Golden State Transit,* 773 F.Supp. at 214, 220 (citing *Frank Music Corp.,* 886 F.2d at 1551). The parties had agreed before trial to submit the question of prejudgment interest to the court, and the jury award therefore apparently represented damages in unadjusted 1981 dollars. *Golden State Transit,* 773 F.Supp. at 207 & n. 5.

On the other hand, prejudgment interest is not awarded routinely. In *Price v. State of Hawaii,* 789 F.Supp. 330, 337 (D.Haw.1992), for instance, the court denied prejudgment interest on attorney's fees and costs where the prevailing defendant unreasonably delayed its motion for such fees and costs. Moreover, it is not always clear what standard to apply in determining whether to award interest. *Id.; Gorelangton v. City of Reno,* 638 F.Supp. 1426, 1433 (D.Nev.1986) (awarding interest, but without publishing a jurisprudential rationale).

As for other Circuits, every Court of Appeals to have considered the issue has held that prejudgment interest is available in Section 1983 cases, although they differ over the proper legal standard to apply. *Foley v. City of Lowell,* 948 F.2d 10, 17 (1st Cir.1991); *Miner v. City of Glens Falls,* 999 F.2d 655, 662 (2d Cir.1993); *Pressey v. Patterson,* 898 F.2d 1018, 1026 (5th Cir.1990); *Winter v. Cerro Gordo County Conservation Bd.,* 925 F.2d 1069, 1073 (8th Cir.1991); *Malloy v. Monahan,* 73 F.3d 1012, 1019 (10th Cir.1996). There are three basic positions. The Second and Tenth Circuits leave the question to the sound discretion of the trial court. Beyond that, the Second Circuit appears to have articulated two factors that guide discretion: the need to fully compensate the wronged party for actual damages suffered, and the

relative equities.[2] *Miner,* 999 F.2d at 662. The Tenth Circuit employs a similar two step analysis: the court must first determine whether interest would serve to compensate the injured party (as opposed to punish the wrongdoer), and then must balance the equities. *Malloy,* 73 F.3d at 1019.

The second basic position is that taken by the Fifth and Eighth Circuits: prejudgment interest is determined in accordance with state law.[3] *Pressey,* 898 F.2d at 1026; *Winter,* 925 F.2d at 1073. We reject this principle. There are, of course, legal questions arising in Section 1983 cases which are determined by state law, such as statutes of limitations, but the question of relief in general is determined entirely by federal law—damages, injunctions, costs, attorney's fees, and postjudgment interest are all determined by federal statutory and decisional law. We see no principled reason not to similarly compute prejudgment interest in accordance with federal law, and we think the Ninth Circuit would so conclude as well. *See Pend Oreille,* 28 F.3d at 1553.

The third basic position is that taken by the First Circuit (and, at least until *Wickham,* by the Second Circuit): a plaintiff must specifically request prejudgment interest from the jury, presumably by special interrogatory. *Foley,* 948 F.2d at 17; see *Frank v. Relin,* 851 F.Supp. 87, 90 (W.D.N.Y.1994) (discussing the change in Second Circuit law effected by *Wickham* ). At first blush, such a rule is bizarre; after all, a judge is probably better equipped to determine prejudgment interest than a jury. Nevertheless, although we do not adopt this as a rigid rule of law, as discussed below we place considerable weight on the rationale behind it.

■ In sum, since no court has ever held otherwise, we conclude that prejudg-

ment interest is available in Section 1983 cases. Since the Ninth Circuit has never spoken on the issue, however, we will apply the general principles that Court has articulated for the ordinary run of federal question cases, as modified by other Circuits. Specifically, the award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the trial court, and is governed by considerations of 1) fairness, 2) making the plaintiff whole (i.e., compensation), and 3) balancing the equities. *Acequia,* 34 F.3d at 818; *Pend Oreille,* 28 F.3d at 1553; *U.S. v. California St. Bd. of Equalization,* 650 F.2d 1127, 1132 (9th Cir.1981), *aff'd,* 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed.2d 157 (1982) (citing *Wessel,* 437 F.2d at 284).

### B. Whether Interest Should Compound on the Entire Verdict, and the Starting Date for Calculating It

■ Having determined that federal law applies, we reject Plaintiff's argument that Nevada prejudgment interest rules should apply. Plaintiff's remaining argument on this point is straightforward: she should be "made whole." Mot. at 2 (# 101). Defendants argue that, based on First Circuit authority, Plaintiff should have explicitly requested prejudgment interest from the jury, that her award was excessive and her lawsuit only partially successful, and that in any event interest should only run on the "loss of earnings" portion of the award. Opp'n at 2–3 (# 103); Supp. (# 104).

First, any interest will run on the entire award, not just on that portion representing "loss of earnings." Some courts have only awarded interest on "liquidated" pecuniary losses, but Plaintiff's losses here—even her loss of earnings—are not truly liquidated. *E.g., Criswell,* 709 F.2d at 557. The jury had to resolve two factual disputes before award-

---

**2.** At least two District Courts within the Second Circuit have employed a slightly different standard imported from the labor discrimination context. *Frank v. Relin,* 851 F.Supp. 87, 90 (W.D.N.Y.1994) (citing *Wickham Contracting Co. v. Local Union No. 3, IBEW,* 955 F.2d 831, 833–34 (2d Cir.), *cert. denied,* 506 U.S. 946, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992)); *Rao v. New York City Health and Hospitals Corp.,* 882 F.Supp. 321, 325 (S.D.N.Y.1995) (same). This standard is not materially different from that in *Miner,*

however, since its only additional factor is "the remedial purpose of the statute involved." *Wickham,* 955 F.2d at 833–34.

**3.** However, at least one District Court in the Eighth Circuit has ignored its own circuit's authority on the issue in favor of the law of the First Circuit. *Compare Winter,* 925 F.2d at 1073, *with Stafford v. State,* 835 F.Supp. 1136, 1148 (W.D.Mo.1993).

ing damages for loss of earnings: how much Plaintiff would have earned had she not been fired, and whether she mitigated her damages. Determining damages by resolving such factual disputes takes the damages in this case out of the category of "liquidated." True, loss of earnings is readily calculable, while "mental and emotional pain and suffering" is not, but damages are not necessarily liquidated merely by being readily calculable. Moreover, Plaintiff probably suffered mental and emotional pain the same way she lost her earnings, one day at a time, each day subsequent to her termination, and this pain and suffering was just as real and just as much an injury as her loss of earnings. That is, non-pecuniary pain and suffering is just as much an "actual loss" (for which prejudgment interest is in order) as loss of earnings. *Cf. id.* (characterizing "pecuniary" losses as "actual" and affirming an award of interest only on such pecuniary losses).

Thus, in this case prejudgment interest should run on the entire award. Furthermore, at a minimum it should run from the date the jury returned its verdict. Defendants' request that we deny any interest at all would be unfair to Plaintiff, who has done nothing to cause delay in entry of judgment (except request prejudgment interest). *Cf. Price,* 789 F.Supp. at 337 (refusing to award prejudgment interest at all where requesting party had unreasonably delayed the award). Balancing the equities, and considering fairness and making the Plaintiff whole, we find that the Defendants should not be able to stall entry of judgment and thereby gain the benefit of the interest they are currently earning on Plaintiff's award.

Next, we must determine whether to award interest starting at a date earlier than the jury verdict. The basic problem here is one of double counting; interest would be inappropriate if the jury already took it into account in its damages award. For three reasons, we conclude that pre-verdict interest would be inappropriate. First, both the verdict form and the pertinent damages instruction tell the jury to set an amount that will "fairly and reasonably compensate the plaintiff." Instruction 37 (# 102, Ex. A); Verdict Form (# 102, Ex. B). Although

there is no explicit discussion of interest or of present value in the jury instructions, the instructions are written in the present tense, so that the most reasonable inference to be drawn from the damages awarded is that they are "fair and reasonable" as of the date of the verdict, rather than as of the date of termination.

Second, the burden of proving the propriety of prejudgment interest ought to be on the party seeking it—the Plaintiff. This appears to be the basis of the First Circuit's rule that a plaintiff must submit a special interrogatory to the jury as to whether prejudgment interest ought to be awarded. *Foley,* 948 F.2d at 17. If there is, practically speaking, no way to discern whether a jury award includes interest, such a principle is in keeping with the rule that the burden of proof is generally on the plaintiff to prove her damages. That is, unless one asks for it, one does not get it.

Third, this case is quite different from either *Herrington* or *Golden Transit,* since there has been no multi-year hiatus in the case that would weigh heavily in favor of prejudgment interest. Accordingly, having balanced the equities and taken into account fairness and compensation, we hold that interest shall run from the date of the verdict, August 7, 1997, to the present.

### C. The Interest Rate

■ As noted above, some courts calculate interest based on rates set by state law. Since this is a case brought under federal law, however, we think the proper rate is the federal rate—namely, the rate set by 28 U.S.C. § 1961(a). In general, courts in the Ninth Circuit have employed this rate. *Ford,* 785 F.2d at 842; *Western Pacific Fisheries, Inc.,* 730 F.2d at 1289; *Herrington,* 790 F.Supp. at 924; *Golden State Transit,* 773 F.Supp. at 218.

As of October 6, 1997, this rate is 5.60%. In addition, we agree with the suggestion of Defendants that the interest should be compounded annually, as provided in 28 U.S.C. § 1961(b). Accordingly, the interest as of October 6, 1997 is:

August 7 to October 6 = 60 days

60 days/365 days × 5.60% × $88,000 = $810.08

## II. Punitive Damages Settlement

■ During the course of the trial, two of the original plaintiffs settled, and Ms. Murphy settled with Defendant Hoskins. Stipulations (# 105, 106, 107). The parties therefore filed stipulations for dismissal. Similarly, during jury deliberations the parties settled the issue of punitive damages. Stipulation (# 98A). We see no principled reason to include the stipulated punitive damages on the judgment while excluding the other stipulated dispositions.

This result is bolstered by the contents of the stipulation itself. The stipulation (# 98A) does not say, "in the event the jury decides to award punitive damages, the final judgment shall be increased by $5000 per defendant." Instead, it states that "in the event that the jury returns a finding that they wish to award punitive damages, each [Defendant] will pay the sum of 5,000.00, plus a written apology." This language makes the stipulation sound like exactly what it is— a straightforward settlement agreement. Such settlement agreements normally do not appear on the final judgment.

In short, we conclude that it is inappropriate to recite the contents of the punitive damages stipulation on the judgment itself.

## III. Front Pay

■ Defendants stipulated at trial that if Plaintiff prevailed she would be offered reinstatement, and they continue to so stipulate today. Opp'n at 5 (# 103). At no time has Plaintiff suggested that she desires front pay in lieu of reinstatement; to be sure, she listed front pay in the Prayer for Relief of her Second Amended Complaint, but there is no mention of it in either the Pretrial Order (# 61) or Plaintiff's Trial Brief (# 85). Indeed, Plaintiff stipulated to list "loss of earnings" on the verdict form, but her trial evidence of lost earnings had to do only with *back* pay.

Furthermore, Plaintiff lost on the one claim (i.e., gender discrimination) for which the law explicitly permits either reinstate-ment or front pay as a form of relief. This is not to say that front pay is unavailable under Section 1983, only that it is more clearly warranted in Title VII cases by statutory command. We are mindful that Plaintiff may experience some hostility if she returns to the City of Elko's employment, but this case has been entirely predicated upon reinstatement and it is simply too late to now seek front pay as an alternative.

## IV. Back Pay

■ Plaintiff has submitted a proposed judgment regarding reinstatement. Mot. (# 101). As mentioned, Defendants have agreed to offer her reinstatement "as though there had been no break in service." Opp'n at 5 (# 103). But Plaintiff's proposed judgment seeks reinstatement with all benefits "including salary." Since this would plainly be duplicative of the jury's award of "loss of earnings," we will only include non-salary benefits in the reinstatement order, except that Plaintiff shall be entitled to whatever raises in pay she would have received but for her termination.

*IT IS, THEREFORE, HEREBY OR-DERED THAT* Defendants' objections (# 103, # 104) to Plaintiff's proposed judgment (# 101) are **OVERRULED IN PART** as outlined above.

*IT IS FURTHER ORDERED THAT* the Clerk of the Court shall enter judgment as follows:

A. in favor of Plaintiff and against Defendant Songer in the sum of $88,810.08,

B. in favor of Plaintiff and against Defendant Kalmer in the sum of $60,153.76,

C. in favor of Plaintiff and against Defendant City of Elko as follows:

Defendant City of Elko shall offer to Plaintiff, within 30 days from entry of this Judgment, reinstatement with any and all benefits which would have accrued from the date of termination to the present, including any appropriate raises, sick leave, vacation leave, pension or retirement benefits, seniority benefits, and any other benefit which Plaintiff

would have received but for the unlawful termination.